OPINION OF THE COURT
Fuchsberg, J.
Wilfredo Ocasio, whose conviction for burglary stands affirmed by the Appellate Division, posits his appeal to us entirely on a claim that his trial was unfair because the Trial Judge refused to preclude the prosecution from attacking the credibility of his only witness by confronting her with a 32-year-old conviction of manslaughter for the fatal stabbing of her mother.
The case is simple. Arrayed against the defendant were the burglary victim and a lone identification witness who testified he saw the defendant depart the building in which the crime was committed immediately after it occurred. The defendant, who had no criminal record, took the stand to testify that he was not there at all. To support his alibi defense, he too was able to produce a witness — a woman of mature years, who, he testified, had been like a mother to him. But there was a fly in this ointment. The lady, it turned out, possessed a rather extensive criminal record punctuated by the old matricide.
When the People rested, and before the defense began to put on its own case, counsel, relying on the remoteness of that crime and what he terms its "disproportionately prejudicial” nature, asked the trial court to apply the standards articulated in People v Sandoval (34 NY2d 371) to preclude the prosecutor from resorting to the surrogate mother’s criminal record to attack her credibility. The Judge, expressing the opinion that Sandoval does not pertain to a witness who is not a defendant and that, in any event, in the exercise of the court’s discretion, the impeaching matter should be allowed, proceeded to reject the defendant’s application. For the reasons which follow, we find no warrant for disturbing the subsequent order of affirmance.
First, we emphasize, once again, that Sandoval did not change substantive standards for permissible cross-examination on prior offenses (People v Davis, 44 NY2d 269, 275; People v Schwartzman, 24 NY2d 241, 247, cert den 396 US 846; People v Sorge, 301 NY 198, 201-202; People v Webster, *58 139 NY 73, 84; People v Tice, 131 NY 651, 657-658; People v Duffy, 44 AD2d 298, 301 [Shapiro, J.], affd 36 NY2d 258, cert den 423 US 861). It sanctioned a procedure by which a Trial Judge may "make an advance ruling as to the use by the prosecutor of prior convictions or proof of the prior commission of specific criminal, vicious or immoral acts for the purpose of impeaching a defendant’s credibility” (People v Sandoval, supra, p 374). As our emphasis indicates, without gainsaying judicial responsibilities with regard to witnesses other than defendants, Sandoval focused on the rights of an accused.
Thus, in explaining why a prospective determination of the permissible scope of cross-examination on such matters was desirable, we there spoke of how fear of the probable effect of the introduction of testimony of this character often will cause a defendant to hide behind his or her privilege not to take the stand, thereby blotting out what may be the only available source of material testimony in support of the defense. In such a case, of course, a court’s quest for the facts may compel it to make a difficult decision as to whether it is more important for the jury to hear the defendant’s story than to know of the prior convictions (Luck v United States, 348 F2d 763; Gordon v United States, 383 F2d 936). How it answers that question is bound to be a crucial determinant in the election a defendant, guilty or innocent, must make between testifying or not testifying.
The Sandoval court also took pains to remark on the need for a "sensitive, informed reconciliation of the interests of the People and the rights of the defendant” (p 375). By way of illustration, among other things, it articulated concern that evidence of past conduct not be intended merely to demonstrate a propensity to commit the crime charged, obviously a prime hazard for a witness who is also a defendant (see Schaefer, The Suspect and Society, pp 67-71; Note, Procedural Protections of the Criminal Defendant — A Reevaluation of the Privilege Against Self-Incrimination and the Rule Excluding Evidence of Propensity to Commit Crime, 78 Harv L Rev 426, 441). For the risk to be avoided is that "the presumption that a defendant is innocent may go by the board solely because of a jury’s natural tendency to conclude, despite limiting instructions, that a defendant who has committed previous crimes is either the kind of person likely to have committed the crime *59 charged or is deserving of punishment in any event (see People v Mayrant, 43 NY2d 236; People v Dickman, 42 NY2d 294, 297; Griswold, The Long View, 51 ABAJ 1017, 1021; McGowan, Impeachment of Criminal Defendants by Prior Convictions, 1970 Ariz State LJ 1; statistical support can be found in Kalven & Zeisel, The American Jury, pp 124, 126-130, 144-146, 160-162)” (People v Davis, 44 NY2d 269, 274, supra).
It must be at once clear that these factors, motivating the establishment of Sandoval’s procedural prescription, have particular and peculiar reference to the defendant witness. But Sandoval did not newly pronounce these concerns. As we have since had occasion to comment, they reflect "jurisprudential considerations whose existence has long been recognized” (People v Davis, supra, p 275). Indeed, it hardly needs saying that for a nondefendant witness, however discomfited by impeaching revelations, neither conviction nor vindication, imprisonment nor freedom, hangs in the balance. Nor does the nondefendant encounter the difficult choice between exposure of the evidence of prior misconduct and the practical prejudice that, no matter how the law shields against it, is nevertheless usually inescapably implicit in an accused’s failure to speak out in refutation of an accusation. In short, unlike the dilemma posed for a defendant, the focus of the impeachment of a witness is credibility, not guilt or innocence. It was these distinctions that called upon us to formulate the Sandoval procedure. For the same reasons, we take the opportunity presented by this case to make explicit that it is inapplicable to witnesses who are not defendants.
That is not to say, with respect to a witness who is not a defendant, that a trial court is precluded, in its sound discretion, from either entertaining an application for a ruling in limine on the permissible scope of cross-examination concerning a nonparty’s prior misdeeds, or, if it believes it best, from refusing to do so in advance of the time when the question presents itself in regular course. The point is that, as . to a nondefendant, a court is under no compunction whatsoever to deal procedurally with cross-examination on prior criminal, vicious or immoral acts in any way that departs from that employed in the regulation of cross-examination generally. Here, the Trial Judge, after correctly holding that the Sandoval dictate did not relate to the witness, nonetheless went on *60 to decide the issue on the merits.* That therefore raises the additional question of whether the trial court in its adverse ruling, and the Appellate Division, in sustaining it, abused their discretion as a matter of law (see People v Shields, 46 NY2d 764; People v Carmack, 44 NY2d 706).
However, the record is so far from indicating any abuse of discretion that it presents no reason for us to be other than brief on this issue. Though it otherwise might be argued that the matricide was an act of violence rather than dishonesty committed in the dim past, the crime did not stand in isolation. Part of a skein of convictions for multiple burglaries and larcenies, it covered too many years and too many jail sentences, though none were recent, to fault the Judge for concluding that in a case where the only independent support for defendant’s alibi was the witness, it was important the jury know who and what she was (People v Duffy, 36 NY2d 258; People v Sorge, 301 NY 198, 202 [Fuld, J.]). Suffice it to say that this also was consonant with the general rule that the scope of cross-examination in most instances is subject to the sound discretion of the Judge vested with responsibility for the management of a trial.
The order of the Appellate Division should be affirmed.
Chief Judge Cooke and Judges Jasen, Gabrielli, Jones and Wachtler concur with Judge Fuchsberg.
Order affirmed.

 After the adverse ruling, defendant’s counsel called the witness and, presumably in anticipation that the District Attorney would do so, reacted to the court’s ruling by developing the fact of the prior matricide on his own direct examination.