412 A.2d 231.

STATE OF RHODE ISLAND *vs.* JAMES R. O'BRIEN.

MARCH 11, 1980.

PRESENT: Bevilacqua, C.J., Kelleher, Doris and Weisberger, JJ.

Bevilacqua, C.J.   This is a criminal appeal in which the defendant, James R. O'Brien, claims three instances of reversible error in a Superior Court jury trial that resulted in his conviction for driving under the influence of intoxicating liquor in violation of G.L. 1956 (1969 Reenactment) §31-27-2, as amended by P.L. 1974, ch. 120, §2, and for driving to endanger, death resulting, in violation of G.L.

1956 (1969 Reenactment) §31-27-1, as amended by P.L. 1978, ch. 208, §2.

The prosecution witnesses and defendant, who took the stand, testified uniformly to the following sequence of events. At approximately 10:30 on the night of May 9, 1974, a green Pontiac Firebird with a tattered roof drove through a green light on Elmwood Avenue in Providence at a speed of approximately thirty to forty miles per hour. The night was clear and the highway was well lit. Some fourteen car lengths down the four-lane avenue from the stop light, the left front portion of the car struck a pedestrian who was standing near the double lines in the middle of the avenue. The driver of the vehicle did not stop. The victim later died of his injuries.

Police arriving at the scene obtained a description of the vehicle from an eyewitness to the accident. Presently, in Memorial Square in Providence, another Providence police officer stopped a vehicle which answered to the eyewitness description. The officer testified that defendant was the person driving the car. Moreover, he stated that the driver appeared to him to be inebriated.

The investigating officers at the accident scene found a metallic letter "O" on the ground not far from where the victim lay. The officers later matched this letter "O" with the letter "P" and the letters "N-T-I-A-C" that they pried off the car which was stopped in Memorial Square. The state introduced the letters into evidence at trial along with a series of photographs depicting the damaged left-front portion of the green Firebird.

At approximately 1 o'clock on the morning after police took defendant into custody they administered a breathalyzer test to him. The results of that test revealed that the percentage of alcohol in his blood was greater than that necesary to meet the statutory definition of intoxication.[1]

---

[1]General Laws 1956 (1968 Reenactment) §31-27-2.1, as amended by P.L. 1978, ch. 174, §1, provides in pertinent part:

"(c) In any criminal prosecution for a violation of §31-27-2 of this chapter, the amount of alcohol in the person's blood at the time alleged as shown by

The medical examiner who conducted an autopsy on the victim testified that he found in the victim's blood traces of alcohol which exceeded the statutory percentage.[2] He further testified that the victim died of shock from multiple injuries and that those injuries were consistent with the victim's having been struck by an automobile.

When Providence police arrested defendant, he had the license of his brother, Paul M. O'Brien, in his possession. Believing that Paul M. O'Brien was his true name, police sought an indictment and filed a complaint against defendant using the name Paul M. O'Brien, alias John Doe[3] and the address appearing on the license. At his arraignment in 1975, defendant pled not guilty as Paul M. O'Brien. Two years later, the trial court introduced him to the jury as Paul M. O'Brien. Three days into the trial, his attorney called as the first defense witness, Paul M. O'Brien, and defendant took the stand. It was not until he was sworn as a witness that he revealed his true identity to the court.

I

The defendant first complains that the trial justice abused his discretion by permitting the prosecutor to cross-examine him beyond the scope of direct examination. On direct exam-

---

chemical analysis of the person's blood, urine or breath shall give rise to the following presumptions:

\* \* \*

3. If there was at that time one tenth of one percent (.10%) or more by weight of alcohol in the person's blood, it shall be presumed that the person was under the influence of intoxicating liquor."

The officer who administered the breathalyzer test to defendant testified that at the end of the first phase of the test defendant's blood alcohol level was .18 percent and at the end of the second phase it was .13 percent.

[2]The medical examiner stated that the level of alcohol in the victim's blood was .22 percent at the time of the autopsy.

[3]As a matter of course the police seek indictments and file complaints in the form of defendant's name and the alias John Doe. Section 12-12-2 of the General Laws sanctions this practice by allowing criminal process to issue in a fictitious name or by description. General Laws 1956 (1969 Reenactment) §12-12-2, as amended by P.L. 1974, ch. 118, §11.

ination, defendant identified himself as James Robert O'Brien, and Paul O'Brien as his brother. Over defendant's objections, the trial justice allowed the prosecutor to inquire into how the discrepancy in names occurred. The defendant states that he had given the police his brother's driver's license and that he had never before told the court his true name. Moreover, he admitted that he had been driving on Elmwood Avenue on the night of the accident and that he had been convicted of manslaughter in Massachusetts in 1970.

In Rhode Island the scope of inquiry on cross-examination is a matter entrusted to the sound discretion of the trial court. *State* v. *Eckhart,* 117 R.I. 431, 436, 367 A.2d 1073, 1075 (1977); *State* v. *Crescenzo,* 114 R.I. 242, 252, 332 A.2d 421, 427 (1975). On review, we shall affirm an exercise of discretion unless abused. *Pansey* v. *Pansey,* 115 R.I. 97, 102, 340 A.2d 120, 124 (1975); *State* v. *Sprague,* 113 R.I. 351, 364, 322 A.2d 36, 43 (1974).

In addition to interrogating a witness about matters that the witness testified to on direct examination, a cross-examiner may also probe into collateral matters in an attempt to contradict, discredit, explain, or lessen the impact of the witness' direct testimony, or attack his memory and credibility. *State* v. *Ragonesi,* 112 R.I. 340, 346, 309 A.2d 851, 854 (1973). When the defendant in a criminal case chooses to testify, he automatically raises the issue of his identity as the perpetrator of the crime charged. By testifying that his name was not the same as that on the complaint and indictment, defendant raised a serious issue of whether he was the person who committed the acts charged. The state properly clarified the confusion on cross-examination and the trial court properly permitted this relevant inquiry. *See State* v. *Earley,* 118 R.I. 205, 212, 373 A.2d 162, 166 (1977); *State* v. *Prescott,* 70 R.I. 403, 411, 40 A.2d 721, 725 (1944). Accordingly, we find that the prosecutor did not inquire beyond the bounds of permissive cross-examination and that the trial court committed no abuse of discretion.

## II

The defendant next contends that the admission of his prior manslaughter conviction into evidence denied him due process of law as an impermissible method of impeaching his credibility insofar as the prior crime did not involve honesty or veracity. He also urges us to adopt the balancing test developed in *Luck* v. *United States*, 348 F.2d 763 (D.C. Cir. 1965), wherein the trial justice must weigh the probative value of the prior conviction against its potential for confusion and impermissible prejudice before he may admit the prior conviction into evidence. *Id.* at 768.[4]

In *State* v. *Lombardi*, 113 R.I. 206, 319 A.2d 346 (1974), we expressly declined to abandon our longstanding statutory rule[5] governing the impeachment of witnesses by prior convictions in favor of a *Luck* balancing test. Nor did we deem it necessary to construe the statute narrowly to limit admissible convictions to those of crimes involving moral turpitude. *Id.* at 208, 319 A.2d at 347. Although we recognize the varying

---

[4]In *United States* v. *Smith*, 551 F.2d 348 (D.C. Cir. 1976), Judge McGowan, the author of the *Luck* opinion, declared that Federal Rule of Evidence 609 had worked significant changes in the *Luck* rule, narrowing the discretion of the trial court to admit evidence of past convictions. *Id.* at 357-61. Under Fed. R. Evid. 609(a)(1), to use a prior felony conviction against a defendant's interests, the government must first convince the trial court that the probative value of the evidence outweighs the threat of impermissible prejudice. *Id.* Under Rule 609(a)(2), any past crime involving dishonesty or false statement is admissible. As a result of this clause, the federal courts have had to make *ad hoc* inquiry into what crimes encompass dishonesty or false statements as a necessary adjunct to determining admissibility. *See, e.g., United States* v. *Fearwell*, 595 F.2d 771, 775-76 (D.C. Cir. 1978) and cases noted at page 777.

Although its continued vitality in the federal courts is questionable, *Luck* remains influential in several jurisdictions. *See, e.g., People* v. *Baldwin*, 405 Mich. 550, 275 N.W.2d 253 (1979); *People* v. *Ocasio*, 47 N.Y.2d 55, 389 N.E.2d 1101, 416 N.Y.S.2d 581 (1979); *Commonwealth* v. *Perrin*, 398 A.2d 1007 (Pa. 1979).

[5]General Laws 1956 (1969 Reenactment) §9-17-15 provides:

"Effect of conviction for crime.--No person shall be deemed an incompetent witness because of his conviction of any crime, or sentence to imprisonment therefor; but shall be admitted to testify like any other witness, except that conviction or sentence for *any* crime or misdemeanor may be shown to affect his credibility." (Emphasis added).

approaches and supporting justifications which other jurisdictions prefer,[6] we again assert our belief that any changes in the rule should be made by the Legislature if at all. *Id.* at 209, 319 A.2d at 347; *Mercurio v. Fascitelli,* 107 R.I. 511, 516, 268 A.2d 427, 430 (1970). We construe Legislative silence as acquiescence to the rule as it now stands.

Moreover, we are satisfied that the limitations we have engrafted onto the statute comport with the requisites of a fair trial. Whenever a party seeks to impeach a witness by evidence of a prior conviction, it is incumbent on the trial court, *sua sponte,* to consider whether the conviction is too remote in time to be of any present probative value. *See State v. Sands,* 76 N.J. 127, 144, 386 A.2d 378, 387 (1978) (remoteness key to prior crimes evidence). Furthermore, at the time the sponsoring party introduces this evidence the trial court must, of its own accord, instruct the members of the jury that they must limit their use of this evidence to their assessment of the credibility of the witness and that otherwise it has no

---

[6]In addition to the *Luck* approach and the modification of *Luck* embodied in Fed. R. Evid. 609, our sister states have adopted a variety of rules to govern the admissibility of past crimes. The Supreme Court of Hawaii has declared the practice of impeachment of a defendant by prior crimes an unconstitutional invasion of an accused's right to testify. *State v. Santiago,* 53 Hawaii 254, 492 P.2d 657 (1971). In West Virginia, only convictions for perjury and false swearing are admissible to impeach the defendant's credibility. *State v. McAboy,* 236 S.E.2d 431 (W.Va. 1977). On the opposite end of the spectrum are jurisdictions that follow a statutory mandate, similar to the one in Rhode Island, which permits the state to impeach a defendant with evidence of any prior crime and vests the trial justice with no discretion except to consider the issue of remoteness. *Commonwealth v. West,* 357 Mass. 245, 258 N.E.2d 22 (1970); *State v. Ruzicka,* 89 Wash. 2d 217, 570 P.2d 1208 (1977).

We recognize that under the Rhode Island law of evidence, when the trial justice must rule on the admissibility of other types of evidence--for example, collateral evidence or character evidence--he has broad discretion to weigh the probative value of proffered evidence against its potential for prejudice. *See State v. St. Pierre,* 118 R.I. 45, 54, 371 A.2d 1048, 1052-53 (1977) (evidence of reputation); *State v. Rezendes,* 111 R.I. 169, 174, 300 A.2d 472, 475 (1973) (relevancy); *State v. Reardon,* 101 R.I. 18, 25, 219 A.2d 767, 772 (1966) (relevancy).

For a fairly comprehensive survey of the varying rules of other states, see the appendix to Judge Wilner's opinion in *Burrell v. State,* 399 A.2d 1354, 1363-67 (Md. App. 1979).

probative force as proof of any of the elements of the crime charged. *State* v. *Lombardi*, 113 R.I. at 209, 319 A.2d at 347; *Mercurio* v. *Fascitelli*, 107 R.I. at 517, 268 A.2d at 430-31. In so doing, the trial justice will minimize the risk of jury confusion about the intended purpose of the evidence.

In the instant case when the prosecutor sought to introduce defendant's prior Massachusetts manslaughter conviction the trial justice considered but failed to issue the requisite cautionary instruction. Neither the prosecutor nor defense counsel reminded him of the cautionary-instruction requirement.

Ordinarily, the trial justice's error would require reversal because a cautionary instruction is necessary to mitigate the strong likelihood of impermissible prejudice that might accompany this evidence.[7] In this instance, however, the evidence of the prior conviction was superfluous and the risk of confusion was minimal. At trial and on appeal defendant did not contest that he had been driving on Elmwood Avenue at the time of the accident, that he had been drinking alcoholic beverages prior to the accident, that he had struck the pedestrian, and that he had fled the scene of the accident. Moreover, he offered no evidence to mitigate, to justify, or to excuse the charge of reckless conduct. Indeed, on redirect examination and recross-examination he admitted to facts sufficient to convince a jury of his guilt beyond a reasonable doubt. An attack on his credibility was unnecessary. In fact, if that evidence had any impact on his credibility, it would have tended to prove the unlikely proposition that he had been lying when he testified to facts that proved his guilt. Even if the jury drew from this evidence the impermissible inference that defendant was inclined to commit crimes, in light of the overwhelming evidence of guilt and the corroborating testimony of defendant, we are persuaded that

---

[7]The Supreme Court of Maine in *State* v. *Roy*, 385 A.2d 795 (Me. 1978), noted two examples of how evidence of past crimes may prejudice a defendant. First, the specter of this damaging evidence may dissuade the defendant from taking the stand on his own behalf. Second, the jury may infer that the defendant is a recidivist and convict him on that basis and not on proof of the crime charged. *Id.* at 797-98.

this error does not require reversal. Neither do we think, given the dictates of judicial economy, that a new trial is warranted.

Although on the record of this case we find that the failure of the trial court to issue cautionary instructions was harmless error, we reemphasize the curative importance of cautionary instructions when a party offers evidence of a prior conviction to impeach a witness.[8] Accordingly, we reiterate that it is the sole responsibility of the trial justice, in the interests of a fair trial, immediately to caution the jury that it is to use this evidence for impeachment purposes only. If the trial court should forget to execute its duty to instruct, we would hope that counsel, as officers of the court, would remind the trial court of its responsibility. *See People* v. *Denny,* 86 Mich. App. 40, 44, 272 N.W.2d 332, 334 (1978).

## III

In defendant's last specification of error he claims that the trial court mistakenly granted the state's motion to amend by interlineation the titles of the indictment and complaint, and wrongly denied his motion for a judgment of acquittal based on the defense of misnomer. The defendant's novel surprise defense tactic precipitated both motions.

By invoking a misnomer defense at the close of the trial, defendant raised two questions of law for the trial court to resolve and for us to review. Initially, we shall consider whether the amendment of the titles prejudiced defendant. It is an elementary principle of criminal law, unaltered since the age of Blackstone, that any form of criminal process "is an accusation of a person of crime. It is an accusation against a person, not against a name. A name is not the substance of an indictment (or complaint)." *Lasure* v. *State,* 19 Ohio St. 43, 50 (1869) (citing 4 W. Blackstone, *Commentaries* 302).

When a person who allegedly committed criminal acts is

---

[8]*See Spencer* v. *Texas,* 385 U.S. 554, 561, 87 S.Ct. 648, 652, 17 L. Ed. 2d 606, 612 (1967); *State* v. *Ruzicka,* 89 Wash. 2d 217, 229, 570 P.2d 1208, 1214 (1977). *See generally State* v. *Earley,* 118 R.I. 205, 212, 373 A.2d 162, 165-66 (1977).

known, and he is positively identified by his accuser and himself as the person who perpetrated those acts, his name is superfluous to the trial of that crime. *See* G.L. 1956 (1969 Reenactment) §12-12-2. When an error in the title of the process is confessedly a technicality, the defendant cannot claim it is prejudicial. *United States* v. *Fawcett,* 115 F.2d 764, 766-67 (3d Cir. 1970); *State* v. *Drury,* 13 R.I. 540, 541 (1882). We agree wholeheartedly with the Third Circuit that "in the progress of the law, narrow formalism should be eliminated * * *." *United States* v. *Fawcett,* 115 F.2d at 766. It is the solemn duty of the courts and counsel to expedite justice, not hinder it.

Second, the trial justice found that the defendant had not timely raised the misnomer defense. The proper time for clearing away technical defects in an indictment or complaint is before trial.[9] Under Super. R. Crim. P. 12(b)(2) an accused must present all formal defenses, like misnomer, via a motion to dismiss within a reasonable time after the arraignment or he is deemed to have waived any formal objection to the process. *See State* v. *Drury,* 13 R.I. at 540-41 (misnomer defense waived unless timely made); *cf. State* v. *LaPlante,* 122 R.I. 446, 409 A.2d 130 (1979) (defendant must raise duplicity defense within reasonable time after general plea entered). Two years after the arraignment and three days into trial is hardly the proper time to raise a misnomer defense. The trial court properly concluded that the defendant had waived any misnomer claim and, therefore, it correctly denied the defendant's motion for a judgment of acquittal and appropriately granted the state's motion to amend the titles of the indictment and complaint.

The defendant's appeal is denied and dismissed, and the judgment appealed from is affirmed.

---

[9]When there is no threat of injustice to the defendant, however, the trial justice, on a motion to amend, may cure the misnomer by interlineation after the trial has begun. *Dunlop* v. *Warden of the Maryland House of Corrections,* 229 Md. 619, 619-20, 182 A.2d 51, 51 (1962); *Commonwealth* v. *Liebowitz,* 143 Pa. Super. Ct. 75, 79, 17 A.2d 719, 721 (1941). Punctilious adherence to the rules of criminal pleading is not an end in itself.

*Dennis J. Roberts II*, Attorney General, *Stephen Lichatin III*, Special Assistant Attorney General, Chief, Appellate Division, for plaintiff.

*Aram K. Berberian*, for defendant.