## (December 31, 1980)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v AN-THONY PROVENZANO and HAROLD KONIGSBERG, Appellants.—Appeal from a judgment of the County Court of Ulster County, rendered June 21, 1978, upon a verdict convicting defendants of the crime of murder in the first degree. When this appeal was first before us, defendants' murder convictions were reversed and a new trial was ordered on the ground the trial court had improperly denied their challenge of an individual juror for cause (70 AD2d 960). The Court of Appeals, distinguishing its earlier holding in *People v Branch* (46 NY2d 645), rejected our analysis of that issue and remitted the case to us to pass upon the balance of defendants' arguments (50 NY2d 420). Since we had already concluded that the trial evidence was not legally insufficient and that the verdict was not against the weight of the evidence (70 AD2d 960, 961), and since

no matters addressed to our discretion have been raised or encountered (cf. CPL 470.20, subds 1, 6), only assignments of error involving the conduct of the trial remain for consideration. Anthony Provenzano and Harold Konigsberg were charged with the murder of one Anthony Castellito approximately 15 years after he disappeared in June of 1961. Although Castellito's body was never discovered, the defendants were jointly tried and convicted upon proof consisting of admissions, accomplice testimony and circumstantial evidence. Our review of the trial record persuades us to the view that the only part of the transcript requiring discussion is that relating to accomplice testimony. Salvatore Sinno, a participant in the Federal witness relocation program, testified for the People. He stated that he agreed to participate with three others in luring Castellito to his farm in Kerhonkson, New York, for the purpose of murdering him in a rural area. The plan was effectuated and about a week later Sinno testified that he met with Provenzano in his office along with Konigsberg and Salvatore Briguglio, the other participant in the murder. At that meeting, Sinno stated, Provenzano gave Konigsberg a sealed envelope, a fact which Sinno related to Provenzano's earlier statement to him that Konigsberg would be paid $15,000 for his efforts. Provenzano claims that corroboration of this testimony was inadequate and that reversal is, therefore, required. The People's corroborating witness, Ralph Picardo, also a participant in the Federal witness relocation program, and an alleged murderer,[1] testified that he met with Provenzano in North Bergen, New Jersey, in late 1972 or early 1973 and, further, that Provenzano stated that Castellito had been killed as a result of a power struggle in the Teamsters Union and that he, Provenzano, had ordered the killing. Clearly, if self incriminating extrajudicial statements made by a defendant constitute sufficient corroborative evidence, the requirements of CPL 60.22 (subd 1) to the effect that "A defendant may not be convicted of any offense upon the testimony of an accomplice unsupported by corroborative evidence tending to connect the defendant with the commission of such offense" has been substantially met in this case. This is so even if, as here, the accomplice is a person of disrepute or may have received a promise of reduced exposure to criminal liability by promising to implicate others (People v Daniels, 37 NY2d 624). Such proof, i.e., a defendant's extrajudicial statements of complicity, has been held to constitute sufficient corroborative testimony so as to permit the question to go to the jury (People v Ozarowski, 38 NY2d 481 [defendant's statement "We think we killed a Spic last night"]; see, also, People v Peller, 291 NY 438; People v Buchalter, 289 NY 181, affd 319 US 427; People v Feolo, 284 NY 381). Accordingly, we conclude that the testimony of witnesses Salvatore Sinno and Ralph Picardo adequately established the accessorial culpability of defendant Provenzano for the crime of murder in the first degree. Therefore, pursuant to section 20.00 of the Penal Law, the conviction of Provenzano for the murder of Anthony Castellito can be affirmed notwithstanding error relating to the cross-examination of another witness for the People, John Nadratowski.[2] However, the limitations placed upon the

---

1. Picardo had been serving a 17 to 23-year term in prison for murder. His conviction has been reversed and a new trial ordered.

2. Provenzano cannot use as a defense the fact that Sinno was never prosecuted for the crime, nor can he use any subsequent reversal as to defendant

cross-examination of witness Nadratowski with respect to prior bad acts were so gross as to constitute an abuse of discretion by the trial court requiring reversal of Konigsberg's conviction since there is no evidence corroborating the testimony of accomplice Sinno as to Konigsberg's guilt other than the testimony of Nadratowski.[3] In chambers, counsel for Konigsberg made an offer of the following proof of acts of individual dishonesty and untrustworthiness of Nadratowski: "1. A certified copy of a Supreme Court order, dated September 17, 1965, which ordered Nadratowski's arrest for failure to pay $700 growing out of his failure to comply with an informational subpoena served as a result of an attorney's attempt to collect the amount owed. 2. A document from the Division of Licensing Services of the Department of State, dated 1966, showing a series of transactions in which a prospective buyer paid $2,000 to Nadratowski as a deposit on land which the latter did not own. After complaint and investigation, Nadratowski was ordered to repay the buyer. He issued a check for $2,000 which proved to be worthless. 3. A certified copy of a determination of the Division of Licensing Services of the Department of State, following a hearing at which Nadratowski was present, finding that Nadratowski, as a real estate broker, issued two bad checks in 1968 to cover ordered client refunds. As a result, the Department of Licensing Services suspended Nadratowski's real estate license for thirty days and ordered that the suspension was to continue until he established an escrow account as required by law, and, further, accounted to the Division to the extent of the number of accounts and the necessary money or deposit to cover the accounts. Nadratowski never complied with this order." The trial court responded by stating "This court's analysis of the material is that it is, one, civil in nature; two, that it's pure speculation; three, it is the judgment of this court it would simply attack the character and reputation of the witness without justifiable cause, and in this court's judgment the material relied upon is not a good-faith basis for the inquiry sought." This ruling, in our view, constitutes reversible error as to Konigsberg. It is established that the scope of cross-examination in most instances is subject to the sound discretion of the Judge vested with the responsibility for the management of a trial (People v Ocasio, 47 NY2d 55, 60). Furthermore, when cross-examination involves prior bad acts of a defendant witness, "the wide latitude and the broad discretion that must be vouchsafed to the trial judge * * * precludes this court, in the absence of 'plain abuse and injustice' * * * from substituting its judgment for his and from making that difference of opinion * * * a basis for reversal" (People v Sorge, 301 NY 198, cited in People v Duffy, 36 NY2d 258, 263; People v Sandoval, 34 NY2d 371). However, such latitude of discretion is much narrower when the witness is not a defendant and his testimony, if improvidently protected by the Judge, supplies the only accessorial proof of a defendant's guilt in a case of murder (People v Ocasio, supra). In Ocasio, the Court of Appeals approved the Trial Judge's refusal to preclude the prosecution from attacking the credibility of defendant's only witness by confronting

---

Konigsberg as a defense (Penal Law, § 20.05, subd 2; see People ex rel. Guido v Calkins, 9 NY2d 77, 81).

3. The trial court did not err with respect to limitations placed upon defense counsel's cross-examination in the areas of truth, veracity and bias of the witness because of his affiliation with the Teamsters Union.

her with a 32-year-old conviction of manslaughter, noting that in a case, as here, where the only independent support for defendant's alibi was the witness, it was important that the jury know who and what the witness was. Here, the trial court and dissent would distinguish *Ocasio* by advancing the theory that such personal traits as individual dishonesty and untrustworthiness, as well as offenses involving theft, fraud and acts of deceit, are divisible, and only those bad acts that are antecedent to the pertinent observation which formed the substance of the witness' testimony are germane in evaluating the totality of his worthiness as a truthful witness. We disagree and concur in the view that such acts "will usually have a very material relevance, *whenever committed*" *(People v Sandoval, supra*, p 377; emphasis added). The exercise of discretion by the Trial Judge should be concerned with the nature of the prior bad acts as evidence or lack thereof of truthfulness, and except for those instances where the passage of time coupled with the witness' conduct as a person since the acts were committed suggest that an injustice to the witness would occur without probatively adding to a fair trial by admitting proof of such acts, the Judge should not weigh such conduct in terms of time. Here, the passage of time relied upon by the trial court may be illusory. The documentary proof offered by counsel for Konigsberg (e.g., a certified document from the Department of Licensing Services of the Department of State) speaks to acts of fraud and deceit that happened prior to the dates of such documents and embrace time periods that could be close to if not contemporaneous with Nadratowski's identification of Konigsberg in 1961. Accordingly, we cannot conclude, as does the dissent, that knowledge of Nadratowski's prior misconduct "would have been irrelevant to proper jury evaluation of Nadratowski's account". Since the error below is of constitutional magnitude *(People v Smoot,* 59 AD2d 898; see *Davis v Alaska,* 415 US 308), the conviction of Konigsberg should be reversed and a new trial ordered as to the defendant Konigsberg (CPL 470.20, subd 1). Judgment modified, on the law, by reversing so much thereof as convicts Harold Konigsberg of murder in the first degree, and directing, as to him, that a new trial be held, and, as so modified, affirmed. Mahoney, P. J., Main and Mikoll, JJ., concur.

Kane and Greenblott, JJ., concur in part and dissent in part in the following memorandum by Kane, J. Kane, J. (concurring in part and dissenting in part). In our view, the judgment should be affirmed in its entirety. Further, while we agree with the majority's resolution of this appeal insofar as it concerns defendant Provenzano, we believe his arguments merit additional comment. Both defendants assert that the trial court incorrectly limited their cross-examination of prosecution witnesses. Initially, we note that the constitutional right of confrontation (US Const, 6th Amdt; NY Const, art I, § 6; see *Pointer v Texas,* 380 US 400) is not boundless (cf. *Barber v Page,* 390 US 719; *People v Safian,* 46 NY2d 181, cert den *sub nom. Miner v New York,* 443 US 912; *People v Epps,* 37 NY2d 343, cert den 423 US 999; *People v Nisonoff,* 293 NY 597, cert den 326 US 745) and that the extent of allowable cross-examination is largely committed to the discretion of the trial court. The applicable general rules—still viable today—were accurately condensed by the Court of Appeals long ago in the following language: "So far as the cross-examination of a witness relates either

to facts in issue or relevant facts, it may be pursued by counsel as matter of right; but when its object is to ascertain the accuracy or credibility of a witness, its method and duration are subject to the discretion of the trial judge, and unless abused, its exercise is not the subject of review; nor can the witness·be cross-examined as to any facts, which, if admitted, would be collateral and wholly irrelevant to the matter in issue, and which would in no way affect his credit." (*Langley v Wadsworth,* 99 NY 61, 63.) In order to deal with the specific complaints of defendant Provenzano in this regard, we find it necessary to set forth the testimony of prosecution witness Ralph Picardo in somewhat greater detail. On direct examination, in addition to eliciting the substance of Provenzano's admissions, it was also disclosed that in 1975 Picardo had been convicted of murder and conspiracy to commit murder in the State of New Jersey; that he subsequently became associated with the Federal witness relocation program and so remained at the time of testifying; that a new trial had been directed upon the reversal of his conviction; and that he was presently awaiting the retrial or the outcome of further appeals. Certain details involving those criminal proceedings were developed on cross-examination by Provenzano's counsel, but Picardo was not specifically asked whether he had engaged in a homicidal act. After he was excused (there was no questioning by Konigsberg's attorney), and after a defense witness recounted a statement by Picardo to the effect that he had falsely incriminated Provenzano to obtain favorable treatment in the disposition of the charges pending against him, Provenzano's attorney expressed a desire to call an unnamed FBI agent to the stand. In a colloquy with the trial court, it was represented that Picardo had confessed his guilt of the New Jersey murder to this agent. It was argued, in part, that revelation of the confession should be permitted because the trial court, in the course of an off-the-record discussion, had disallowed inquiry about the commission of this crime during Picardo's cross-examination. Following a somewhat disjointed exchange, the proposed testimony was rejected. Provenzano maintains that he was precluded from asking Picardo about the commission of a crime and that evidence thereof in the form of a confession should have been received. Some of the trial court's remarks tend to bolster Provenzano's first premise, for they seemingly reflect misunderstanding or error concerning the use of former misdeeds, in addition to convictions, as proper subjects of cross-examination. However, since the record contains no indication of an effort by Provenzano's attorney to ask the witness if he had performed any criminal acts, and since no objection was then voiced to a supposed ruling dehors the record, we may not infer from mere comments that error was necessarily committed at an earlier point in the trial. While the absence of a protest is not fatal to consideration of an issue in this court, there is nothing whatever to review when, as here, the factual context in which the dispute arose is not preserved. Provenzano's second contention is equally flawed, but for a different reason. Had Picardo admitted or denied involvement in the New Jersey murder, the matter, ordinarily, would be at an end. An admission would completely effect the desired impeaching result, whereas a denial, though not conclusive, would foreclose later contradiction through the introduction of extrinsic proof (cf. *People v Sorge,* 301 NY 198, 201). Recognizing this barrier,

it is said that the confession is relevant to an issue other than Picardo's credibility; namely, his motive and bias in testifying for the prosecution. Although this exception to the collateral evidence rule is undoubtedly valid (see *People v Schwartzman,* 24 NY2d 241, 245), its application to the circumstances of this case would distort reality. Picardo's status was thoroughly explored. His self-interest was readily apparent, relentlessly pursued in cross-examination, and directly quoted by a defense witness. Picardo's expectation of reward was stressed from opening remarks through summation, and the jury was fully aware that he had been convicted of murder on one occasion. Knowledge of the confession might have further weakened his general credibility, but its existence could hardly be thought to supply an independent motivation for perjury. Defendant Konigsberg also complains that his cross-examination of a prosecution witness was unduly restricted and, as with defendant Provenzano, we deem it necessary to recite the prevailing circumstances at greater length. Before doing so, however, we observe that this witness, John Nadratowski, made no reference to Provenzano and was not questioned by his attorney. As a preliminary matter, therefore, there would be no basis for upsetting Provenzano's conviction even if we agreed with the majority's determination that error was committed which necessitates a reversal of Konigsberg's conviction. Nadratowski's account on direct examination corroborated the testimony of an accomplice, Salvatore Sinno, by identifying defendant Konigsberg and placing him at the scene of Castellito's demise at the time Sinno maintained it occurred in June of 1961. Aware from a pretrial *Wade* hearing that Nadratowski had first reported his observations and made this identification within a few days after the event, Konigsberg's attorney maintained in his opening address that while the initial description was of a slightly balding six-foot two-inch individual, his client was five-foot nine-inches tall and had a full head of hair. Variances in the descriptions Nadratowski furnished to police authorities over the intervening period before trial were vigorously probed during cross-examination, but such questioning brought out and reinforced an important fact: the witness *consistently* named Konigsberg as one of the persons he had encountered 17 years previously. In the absence of the jury, Konigsberg's counsel stated that he wanted to pursue alleged dishonest or immoral behavior on the part of this witness and received the ruling quoted by the majority. Other proposed topics were mentioned and similarly rejected, as was a later offer to introduce negative character evidence. We conclude that none of these determinations of the trial court requires reversal. Assuming Nadratowski's reputation for veracity in 1961 could be placed in issue (see *Dollner v Lintz,* 84 NY 669), Konigsberg's offer of proof was woefully inadequate. It may not be critical that the impeaching witness, Nadratowski's father-in-law, lived in a distant community (cf. *People v Colantone,* 243 NY 134), but it was not demonstrated that Nadratowski had earned a general reputation which had reached that far and was known by the witness. Instead, it appears that whatever "knowledge" the witness possessed was gained through personal dealing with his relative *(People v Colantone, supra,* pp 138-139). Next, Konigsberg's offer to establish Nadratowski's bias against him or a motive to testify falsely was likewise insufficient. When the matter was first broached, only vague and tenuous associations be-

tween the witness and principals in the case were suggested. Nadratow- ski was thereafter recalled and examined as a defense witness concerning his union activities and those of his relatives. All of these hypothesized connections were speculative, remote, or of no demonstrable probative value, thus warranting the exclusion imposed by the trial court (cf. *People v Thomas,* 46 NY2d 100, 105; *Potter v Browne,* 197 NY 288; *Schultz v Third Ave. R. R. Co.,* 89 NY 242). Lastly, we turn to con- sideration of the trial court's prohibition against questioning aimed at instances of prior misconduct. As with the witness Picardo, some of the court's comments do appear to reflect mistake or misunderstand- ing. We recognize that Nadratowski was not a defendant *(People v Ocasio,* 47 NY2d 55) and that at least a portion of the alleged conduct fairly implied dishonesty (see *People v Schwartzman,* 24 NY2d 241, *supra),* but closer scrutiny persuades us that the ruling was correct. The demonstration of past wrongdoing may be enough to convince a fact finder that a witness is unworthy of belief in general and, there- fore, that his or her account should not be credited. In the typical case, this method of impeachment utilizes vicious, immoral or criminal acts which transpired before the relevant facts in issue arose (e.g., *People v Ocasio,* 47 NY2d 55, *supra).* Here, however, while such "bad acts" supposedly occurred before Nadratowski took the stand, the offer indicates they postdated the pertinent observations which formed the substance of his testimony. In our view, this distinction is vital, for such intervening misbehavior, even if admitted, would not tend to cast doubt on his sighting of Konigsberg in 1961. True, it might become material if the identification procedure had been conducted after 1968 or had his direct testimony included additional relevant incidents occurring thereafter, yet that was not the case. Other examples might also be theorized, but the narrow task of this court is to determine whether there has been an abuse of the trial court's undoubted dis- cretion to limit or restrict cross-examination which is plainly col- lateral to disputed issues (cf. *People v Ramistella,* 306 NY 379) and does not bear on a witness' credibility (e.g., *People v Braun,* 158 NY 558). Though the situation at bar is unusual, we conclude that the ruling of the trial court should be upheld since knowledge of the alleged misdeeds would have been irrelevant to proper jury evalua- tion of Nadratowski's account. Finally, we find no merit in the asser- tions by both defendants that the prosecutor's summation deprived them of a fair trial and that certain requests for jury instructions were improperly denied.