Harold **KONIGSBERG**, Plaintiff.

v.

Eugene **LEFEVRE**, Superintendent of Clinton Correctional Facility, and Rodney Moody, Head Clerk of Clinton Correctional Facility, Defendants,

Harold Konigsberg, Plaintiff,

v.

Michael A. Kavanagh; Lt. Joseph Demskie; John Coleman; Vernon Darmstedter; Joseph Rugerio; Lt. Livio Golazza; James Terwilliger; Richard A. Brown and Mark Nietsche, Defendants,

Nos. 80–CV–609, 80–CV–657.

United States District Court, N.D. New York.

May 22, 2003.

---

William J. Kurtz, Syracuse, NY, for Plaintiff.

Hon. Eliot Spitzer, Attorney General of the State of New York, Eugene S. Lefevre, Rodney Moody, Michael Kavanaugh, Lt. Joseph Demske, John Coleman, Vernon Darmstadter; Joseph Ruggerio, Lt. Livio Golazzo, James Terwilliger, Henry Ramirez, Richard A. Brown and Mark Nietschke, Department of Law, The Capitol, Albany, NY, David B. Roberts, Douglas Goglia, Assistant Attorneys General, for Defendants.

Cook, Tucker, Netter & Cloonan, P.C., Michael Kavanaugh, Kingston, NY, Robert E. Netter, Of Counsel, Co–Counsel for Defendant.

## MEMORANDUM DECISION AND ORDER

MUNSON, Senior District Judge.

This matter is composed of two civil rights actions: *Konigsberg v. Lefevre and Rodney*, 80–CV–609, and *Konigsberg v. Kavanagh, et al*, 80–CV–657. Both actions were instituted in 1980 approximately two weeks apart, but because of the facts and occurrences touched on in the pleadings and motion papers, they have become permanently affiliated. Consequently, they will be examined coincidently.

In the first case *Lefevre/Moody*, plaintiff alleges that he was imprisoned at the Clinton Correctional Facility, Dannemora, N.Y. ("Clinton") from 1976 until January 1979, when he was transferred to the Attica Correctional Facility, Attica, N.Y. ("Attica").

Under then Department of Correctional Services ("DOCS") Directive § 4931, a transferring inmate is allowed to take four bags of personal property with him. Any excess personal property may be (1) shipped to the inmate's relatives at the inmate's expense; (2) given to a charitable organization; (3) transferred to another inmate; (4) destroyed; or (5) forwarded to the correctional facility to which the inmate is being transferred at the inmate's expense.

At the time plaintiff was transferred to Attica, he had over 1,540 lbs. of excess personal property, stored in twenty-two boxes and two duffle bags at Clinton. Plaintiff refused to accept any one of the five options set out in Directive § 4913, would not authorize a disbursement from his inmate account for the cost of shipment, and claimed that it was DOCS' obligation to have the excess property shipped to Attica at their expense. When plaintiff was transferred to Attica, Clinton placed $418 from his inmate account in escrow until the payment for the shipment of the excess property controversy was settled.

Plaintiff's family then offered to pay the shipment costs from the Correctional Facility to their residence. Plaintiff's wife was told that the shipping charge would be $140.80, but plaintiff refused to sign an authorization that would permit the property to be sent to his relatives.

Plaintiff then brought two proceedings under Article 78 of the New York Civil Practice Law and Rules in the New York State Supreme Court for Wyoming County. In March 1980, a stipulation ("the Stipulation") was entered by the parties to the two Article 78 proceedings.

Under the Stipulation's terms, DOCS agreed that; (A) plaintiff would be transferred from Attica to Eastern Correctional Facility ("Eastern"); (B) plaintiff would not be transferred from Eastern without the approval of DOCS' Director of Special Housing and DOCS' Deputy Commissioner for operations: (C) plaintiff would be transferred only if there was "a perception that [plaintiff] had become a threat to the safety and security of [Eastern]"; (D) all of plaintiff's property at Clinton would be shipped to Eastern within twenty days of his arrival at Eastern, at no cost to plaintiff; and (E) the balance of account escrowed at Clinton would be transferred to his account at Eastern.

Plaintiff was transferred to Eastern on April 11, 1980. His property that was stored at Clinton was received at Eastern 55 days later at about 8:30 am on June 6, 1980; he was escorted to Eastern' baggage storage room to inspect the 22 boxes and two duffel bags that had been received from Clinton. At that point, plaintiff declined to take possession of, or inventory the boxes or bags. He did, however, sign statements acknowledging that he had seen his property at Eastern and would not take possession of it because DOCS violated the Stipulation by not delivering his property within 20 days of his reaching Eastern. He further alleged that not all of his legal papers were delivered, some were copies, others had been removed or destroyed, and the money in his account at Clinton had not been transferred to Eastern because it had been embezzled.

Plaintiff then sent two letters dated June 6, 1980, to Defendant LeFevre accusing him of violating the Stipulation because plaintiff had not delivered his property within twenty days of his arrival at Eastern. Defendant LeFevre replied to these letters with his own letter of June 25, 1980. The letter stated that the records at Clinton show that twenty-two boxes, two duffle bags and a desk board were delivered to Eastern and that these items constituted all of plaintiff's personal property held at Clinton. It also explained that the proper-

ty was originally in bags, but had been placed in boxes for transport because bags were unacceptable for shipment. The letter concluded that all of plaintiff's property had been inventoried and listed on DOCS Form 264, and plaintiff could check his property against Form 264 when he accepted receipt of it at Eastern. Plaintiff declined to do so. Plaintiff has offered no explanation as to how he determined that certain legal materials had been removed, copied or destroyed without opening the shipping containers and examining their contents.

Plaintiff was also advised that the $418 being held in escrow at Clinton had been forwarded to Eastern and placed in his inmate account there.

Plaintiff then filed the first lawsuit, *Konigsberg v. Lefevre and Moody*, 80–CV–609, asserting that defendants breached the order of the New York court by the late delivery of his property, delaying the transfer to Eastern of the $418 in his inmate account, and not delivering all of his excess personal property in the condition in which it had been packed at Clinton. He further maintains that defendants' delay in delivering his legal materials and their condition upon receipt thereof, unconstitutionally denied him access to the courts. The complaint seeks return of his property and monies as well as compensatory and punitive damages.

In the second lawsuit, *Konigberg v.Kavanaugh et al.*, 80–CV–657, plaintiff asserts that the defendants entered into a conspiracy to violate his constitutional, statutory and civil rights, to harass him so that he couldn't prepare his legal papers, and to create a reign of terror in order to have plaintiff transferred from Eastern thereby preventing his access to the courts, his attorney of record, legal assistants, and his family. This complaint seeks compensatory damages and injunctive relief.

The complaint in the *Konigsberg v. Lefevre and Moody* action was filed on July 30, 1980 and the complaint in the *Konigsberg v. Kavanagh, et al.* was filed on July 12, 1980. Both cases are civil rights actions that allege violations of 42 U.S.C §§ 1983 and 1985.

Currently before the court are three summary judgment motions pursuant to Rule 56 of the Federal Rules of Civil Procedure. The first was filed on March 28, 2002, by defendant Michael Kavanagh; the second was filed on April 5, 2002, by defendants Eugene Lefevre, Rodney Moody, Lt. Joseph Demskie, John Coleman, Vernon Darmstadter, Joseph Reggerio, Lt. Livo Golazzo, James Terwilliger, Henry Ramirez, Richard A. Brown, and Mark Nietschke; ("the State defendants"); the third, filed by the plaintiff on May 23, 2002, cross moves against defendants' two motions. All motions have been opposed by the respective parties.

## DISCUSSION

Unlike a motion to dismiss that limits its review to the complaint and determines its legal feasibility, but does not assay the weight of evidence which might be offered in support thereof, a motion for summary judgment allows the court to evaluate the pleadings, depositions, affidavits, answers to interrogatories, and admissions in ruling on the motion. *Schering Corporation v. Home Insurance Co.*, 712 F.2d 4, 9 (2d Cir.1983).

Rule 56 of the Federal Rules of Civil Procedure permits summary judgment where the evidence demonstrates that "there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247,

106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). Summary judgment is properly regarded as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett,* 477 U.S. 317, 326, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1991)(quoting Federal Rule of Civil Procedure 1). In determining whether there is a genuine issue of material fact a court must resolve all ambiguities and draw inferences against the moving party. *United States v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)(*per curiam*). An issue of credibility is insufficient to preclude the granting of summary judgment. Neither side can rely on conclusory allegations or statements in affidavits. The disputed issue of fact must be supported by evidence that would allow a "rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Unsupported allegations will not suffice to create a triable issue of fact. *Goenaga v. March of Dimes Birth Defects Foundation,* 51 F.3d 14, 18 (2d Cir.1995). Nor will factual disputes that are irrelevant to the disposition of the suit under governing law preclude the entry of summary judgment. *Anderson,* 477 U.S. at 247, 106 S.Ct. at 2509.

To the extent that the parties cross-move for summary judgment, the court must draw all reasonable inferences against granting summary judgment to determine whether there are genuine issues of material fact to be tried. *Continental Grain Company v. Puerto Rico Maritime Shipping Authority,* 972 F.2d 426, 429 (1st Cir.1992). If there is any genuine issue of material fact, both motions must be denied as to the affected issue or issues of law; if not, one or the other party is entitled to judgment as a matter of law, and the court will render judgment. *Thomas Publishing Company v. Division of Human Rights,* 456 F.Supp. 1104, 1108 (S.D.N.Y. 1978).

The record in this case contains an Interdepartmental Communication dated January 15, 1979. This document was sent by Correction Officer Sgt. E Carter, to J.E. Sullivan, Deputy Superintendent Security, at the Clinton Correctional Facility, and it concerned the packing and manner of shipment of plaintiff's excess personal property from Clinton to the Attica Correctional Facility, to which plaintiff was being transferred. The document was signed as witnesses by the four Corrections Officers who observed and packed plaintiff's excess personal property on that date. (Ex. A, Goglia affidavit). At the time, Department of Correctional Services ("DOCS") Directive § 4913 provided that an inmate being transferred could take four duffle bags of personal property with him and be given the opportunity to: (1) ship his excess property to his relatives, at his expense; (2) give his excess property to a charitable organization; (3) properly transfer his excess property to another inmate; (4) have his excess property destroyed; or (5) have the excess property shipped to his new Correctional Facility, at his expense.

The Interdepartmental Communication states that plaintiff's property was packed in his presence and no objection was made concerning the packing procedures. However, when requested to sign the I–64 Forms that listed the materials packed by the Correction Officers, plaintiff refused to do so because he did not ask for the transfer, that he was being transferred for the convenience of DOCS and therefore it was DOCS' responsibility to transfer all of his personal property with him without cost.

Plaintiff may have been being transferred for the convenience of DOCS, but "[it] is well settled that the decision to where to house inmates is at the core of prison administrators expertise" *McKune v. Lile*, 536 U.S. 24, 39, 122 S.Ct. 2017, 2027, 153 L.Ed.2d 47 (2002). Transfers between correctional facilities "are made for a variety of reasons and often involve no more than informed predictions as to what would best serve facility security or the safety and welfare of the inmate safety." *Meachum v. Fano*, 427 U.S. 215, 228, 96 S.Ct. 2532, 2540, 49 L.Ed.2d 451 (1976). A prisoner's liberty interests are sufficiently extinguished by his conviction such that the state may generally confine or transfer him to any of its institutions, to prisons in another state or to a federal prison. *Id.* at 225, 96 S.Ct. at 2537. A non-consensual transfer is not *per se* a violation of either due process or equal protection rights, and no due process protections such as notice and hearing need be afforded before a prisoner is transferred even if the transfer is for disciplinary reasons or to a less favorable institution. *Montanye v. Haymes*, 427 U.S. 236, 242, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976). Inmate transfers are day to day functions of state prisons, and involving the judiciary in these issues and discretionary decisions are not the business of federal judges. *Meachum*, 427 U.S. at 228–29, 96 S.Ct. at 2540.

In his complaint, plaintiff claims that his inability to access his legal files prevented him from preparing and submitting important legal material in support of his then pending criminal appeal in the Appellate Division, Third Department. He does not point out that he was represented on his appeal by New York City attorney Ivan S. Fisher, who submitted a brief on his behalf, and successfully prosecuted plaintiff's case. *People v. Anthony Provenzano and Harold Konigsberg*, 79 A.D.2d 811, 435 N.Y.S.2d 369 (3d Dept 1980). After the appeal was won and a new trial granted, plaintiff then claimed in his motion papers that not having his legal materials papers present "perhaps" may have caused the loss of his subsequent new trial. This latter statement is pure speculation and does not constitute denial of access to the courts.

To establish standing to assert a claim of denial of access to the courts, a prisoner must demonstrate an "actual injury" by showing the denial of legal resources prejudiced pending litigation. *Lewis v. Casey*, 518 U.S. 343, 351–53, 116 S.Ct. 2174, 2180–81, 135 L.Ed.2d 606 (1996). The injury to be demonstrated is injury to the right of access, by showing prison officials frustrated or impeded a prisoner's efforts to pursue a non-frivolous legal claim. *Id.* at 354, 116 S.Ct. at 2181. However, the Constitution requires no more than reasonable access to the courts. *Jermosen v. Coughlin*, 877 F.Supp. 864, 871 (S.D.N.Y.1995).

Plaintiff's claim that defendants' delay in delivering his legal materials from Clinton to Easton denied him access to court lacks vitality. Interferences that merely delay an inmate's ability to work on a pending action or to communicate with the courts does not rise to the level of a constitutional violation. *Smith v. O'Connor*, 901 F.Supp. 644, 649 (S.D.N.Y.1995); *Jones v. Smith*, 784 F.2d 149, 151–52 (2d Cir.1986).

Plaintiff makes a general claim that some of his legal materials were lost, copied or purposely destroyed by defendants. Plaintiff's statement that he has been denied access to the courts is wholly conclusory. Although he does identify a pending appeal, he does not identify particular legal documents; show how the al-

legedly missing documents related to his appeal or new trial; assert any facts showing that his pursuit of any litigation identified by him was in any way affected by his lack of access to any particular documents. Plaintiff does not indicate how he has been "denied access" within constitutional limitations. He has failed to establish the existence of a genuine issue of material fact or to even plead a constitutional claim with respect to his right of access to the courts allegations. The court cannot presume harm in evaluating whether defendants have violated plaintiffs right of access to the courts. See *Lewis v. Casey*, 518 U.S. 343, 360 n. 7, 116 S.Ct. 2174, 2184 n. 7, 135 L.Ed.2d 606 (1996). ("Courts have no power to presume and remediate harm that has not been established."); see also, *Arce v. Walker*, 58 F.Supp.2d 39 (W.D.N.Y.1999) ("a prisoner's conclusory assertion that he suffered prejudice does not suffice to support an access to courts claim . . . some showing of impaired access is required").

In view of the fact that plaintiff's appeal was granted and a new trial ordered, plaintiff's contentions that he suffered prejudice in the appellate process do not support an access to court claim. Nor does his speculation that he lost the new trial "perhaps due to the missing or destroyed documentation" (Pltf. Reply Mem. of Law, p. 9). *Boswell v. Mayer*, 169 F.3d 384, 387 (6th Cir.1999).

 Plaintiff's complaint in his companion law suit, *Konigsberg v. Kavanagh, et al.*, alleges that the defendants therein violated 42 U.S.C. § 1985 when they conspired to harass him and create "a reign of terror" in order to obstruct his preparation of a brief in support of his pending appeal. Although plaintiff properly alleges that the defendants conspired to violate his due process rights, to state a claim under 1985, a complaint must allege a conspiracy as well as some class-based discriminatory animus behind the conspirators' action. A class must possess the characteristics of a discreet and insular minority, such as race or gender. Plaintiff clearly does not plead any class-based discriminatory animus, and the court has been given no reason to suppose that any such animus exists. The plaintiff cannot recover for any violations of 42 U.S.C. § 1985 under the facts he has alleged. *United Brotherhood of Carpenters Joiners of America, Local 610 AFL–CIO v. Scott*, 463 U.S. 825, 834, 103 S.Ct. 3352, 3359, 77 L.Ed.2d 1049 (1983); *Newell v. Brown*, 981 F.2d 880, 886 (6th Cir.1992), *cert. denied*, 510 U.S. 842, 114 S.Ct. 127, 126 L.Ed.2d 91 (1993); *Justice v. Coughlin*, 941 F.Supp. 1312, 1326 (N.D.N.Y.1996).

 In his motion papers, plaintiff sets forth new contentions not included in either of his complaints, that the DOCS defendants' engaged in a continuing conspiracy to transgress his civil rights and subvert his attempt to set aside his conviction. He maintains that the continuing violation most recently occurred in March 2002, when officials of the Auburn Correctional Facility confiscated and unlawfully destroyed several boxes of his excess personal property.

 The "continuing violation exception extends the limitations period for all claims of wrongful acts committed under an ongoing policy of doing so, even if those acts, standing alone, would have been barred by the statute of limitations." *Annis v. County of Westchester*, 136 F.3d 239, 246 (2d Cir.1998). A party cannot invoke the doctrine to avoid statute of limitations problems when he knew after each allegedly wrongful act that it was actionable, but chose not to file federal claims regarding them within the limitations period. *Moskowitz v. Trustees of*

*Purdue University,* 5 F.3d 279, 282 (7th Cir.1993).

Few of the attempts to invoke the doctrine are successful. *Deepwells Estates Inc. v. Village of Head of Harbor,* 973 F.Supp. 338, 345 (E.D.N.Y.1997), and the continuing violation doctrine is disfavored in the Second Circuit. *Sharkey v. Lasmo,* 992 F.Supp. 321, 324 (S.D.N.Y.1998)(citing cases).

Plaintiff's claims concerning the DOCS personnel at Auburn, outside the limitation period, do not amount to a continuing violation or a continuous set of events that can be anchored to some event within the limitation period that expired many years ago. Rather, the allegations amount to a discrete event involving different people, circumstances and location. Even if the doctrine was appropriate in this case, plaintiff has not established a continuing violation to permit its application. Cases applying the doctrine require a "dogged pattern" of related acts before a series rises to the level of a continuing violation. As alleged, and construing plaintiff's claims liberally, the claims are too diverse and disconnected to constitute a "dogged pattern" of lawless acts.

Accordingly, the summary judgment motions made by defendant Kavanagh and the State defendants, are **GRANTED** and the complaints in these two cases are dismissed; plaintiff's cross motion for summary judgment in these two cases is **DENIED**.

**IT IS SO ORDERED.**