■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v GREGORY ZZ., Appellant.—Weiss, J. Appeal from a judgment of the County Court of Ulster County (Vogt, J.), rendered May 14, 1986, which sentenced defendant upon his adjudication as a youthful offender.

After a jury trial, defendant, a 16-year-old black male, was convicted of rape in the first degree based on an incident at the Pine Grove Resort in Ulster County on June 14, 1985. The alleged victim, also 16 years old, was a lifeguard at the resort. At sentencing, County Court vacated the conviction and accorded defendant youthful offender status. On this appeal, defendant maintains that (1) he was deprived of his constitu-

tional right to a jury panel chosen from a fair cross section of the community, (2) the prosecutor exercised his peremptory challenges to exclude minorities from the petit jury in violation of the constitutional principles recently enunciated in *Batson v Kentucky* (476 US 79), and (3) the evidence was legally insufficient to support the verdict. We find these contentions to be without merit.

Defendant's initial argument is premised on the assertion that blacks have been underrepresented on Ulster County jury panels for a substantial period of time. Both the People and County Court acknowledged that blacks are a substantial and identifiable group in Ulster County and have long been underrepresented on jury panels. To complete a prima facie case, however, defendant was required to show that this underrepresentation resulted from some systematic discrimination *(see, Duren v Missouri,* 439 US 357, 366; *People v Guzman,* 60 NY2d 403, 410, *cert denied* 466 US 951; *People v Tucker,* 115 AD2d 175, *lv denied* 67 NY2d 766). In effect, defendant was required to demonstrate that the exclusion of blacks was "inherent in the particular jury-selection process utilized" *(Duren v Missouri, supra,* at 366). In our view, no such showing was made. During the course of a hearing on this issue, Robert Jordan, the Ulster County Commissioner of Jurors, testified that the approximately 12,000 members of the master jury pool were primarily obtained from the county's voter registration lists and that jury panels were selected at random from this list. Jordan further elaborated on the efforts made to attract additional minority jurors, including appearing before a local chapter of the NAACP and communicating with the local State college. There is simply no indication in this record that the underrepresentation of blacks was the product of the selection process utilized. Nor did defendant make any attempt to demonstrate or even suggest that the panel selection process was tainted by intentional or deliberate discrimination *(see, People v Guzman, supra,* at 412). As such, County Court properly denied defendant's challenge to the jury panel.

Next, defendant asserts that by peremptorily challenging the only two black venire members, and another member apparently of Hispanic extraction, the prosecutor violated his rights under the Equal Protection Clause of the US Constitution 14th Amendment, which prohibits the exclusion of a potential juror solely on the basis of race *(Batson v Kentucky,*

476 US 79, *supra*).[1] We reach a contrary conclusion. The People concede that defendant presented a prima facie case of discrimination with respect to the two potential black jurors *(see, Batson v Kentucky, supra)*.[2] As such, it was incumbent upon the prosecution to provide race-neutral explanations for the exercise of these peremptory challenges *(supra)*. Since the finding of intentional discrimination is a factual matter requiring an evaluation of the prosecutor's credibility, County Court's assessment is entitled to great deference *(supra, at 89, n 21)*. Here, the prosecutor essentially explained that he excused the minority jurors because each failed to meet a profile designed for the case of Ulster County residents with children near the victim's age. Notably, the record shows that the prosecution challenged other jurors who were single or had children much older than the victim on a fairly consistent basis. In our view, County Court could readily conclude that the exclusion of the minority jurors was premised on articulable and racially neutral criteria *(see, People v Baysden, 128 AD2d 795; People v Cartagena, 128 AD2d 797; People v Simpson, 121 AD2d 881, 883, lv denied 68 NY2d 773; cf., People v Scott, 70 NY2d 420)*. Thus, the inference of purposeful discrimination was sufficiently rebutted.

Finally, viewed in a light most favorable to the People, the record provides ample evidence of forcible compulsion to support the jury's verdict *(see, People v Butler, 132 AD2d 771, 772; People v Sargeant, 128 AD2d 914, 915)*. The victim essentially testified that defendant pushed and pinned her against the wall and then physically restrained her in a "bear hug" while he raped her. There was further testimony from the victim's supervisor that she was shaking and crying shortly after the incident and kept repeating "he wouldn't leave me alone". The medical evidence confirmed the presence of semen and disclosed that the victim's hymen had been torn in two places. Defendant's assertion that the victim voluntarily engaged in sexual intercourse with him simply presented a credibility question for the jury *(see, People v Laundry, 122*

---

1. *Batson* was decided after defendant's trial commenced, but is accorded retroactive application *(Griffith v Kentucky, 479 US 314, 107 S Ct 708; People v James, 132 AD2d 932)*. We take note that defendant has not pursued on appeal the argument that 18 to 21 year olds were also underrepresented on the jury panel *(see, People v Fisher, 97 AD2d 651)*.

2. We observe that defendant did not make out a prima facie case with respect to the Hispanic juror. In any event, the prosecutor observed that this juror had only resided in the community a short period and had no children.

AD2d 450, 451; *People v Troy,* 119 AD2d 880, 882, *appeal dismissed* 68 NY2d 998; *People v Pasko,* 115 AD2d 114, 115, *lv denied* 67 NY2d 887). Nor, despite defendant's argument, were the People required to establish "earnest resistance" in proving forcible compulsion *(see,* L 1982, ch 560, § 1), or that the victim was placed in fear of "serious" physical injury *(see,* L 1983, ch 449, § 1). Proof that defendant utilized physical force in perpetrating this act is all that the statute requires (Penal Law § 130.00 [8] [a]; § 130.35 [1]). In sum, the evidence of "forcible compulsion" was legally sufficient to support the verdict, which comports with the weight of the evidence.

Judgment affirmed. Main, J. P., Casey, Weiss, Mikoll and Levine, JJ., concur.