THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
HAROLD KONIGSBERG, Appellant.

Third Department, May 12, 1988

*Mark Lemle Amsterdam* (*J. Jeffrey Weisenfeld* of counsel), for appellant.

*Michael J. Kavanagh, District Attorney,* for respondent.

**OPINION OF THE COURT**

MERCURE, J.

Anthony Castellito disappeared abruptly in 1961 and, although his body was never found, defendant was indicted along with two codefendants on a charge of murder in the first degree (*see,* former Penal Law of 1909 § 1044). At a joint trial with codefendant Anthony Provenzano, defendant was convicted of murder in the first degree and sentenced by County Court to life imprisonment, with no provision being made for such sentence to run concurrently or consecutively to the prison term defendant was then serving. Initially reversed by this court for errors committed during jury selection (*see, People v Provenzano,* 70 AD2d 960), both judgments were reinstated by the Court of Appeals and the case remanded to this court for determination of issues not initially considered (*see, People v Provenzano,* 50 NY2d 420). On remand, Provenzano's conviction was unanimously affirmed, but defendant

was granted a new trial because the defense had been prohibited from using certain bad acts to impeach the credibility of the prosecution's corroboration witness *(see, People v Provenzano,* 79 AD2d 811). As adduced at defendant's second trial, the facts surrounding the murder were substantially the same as found by this court in 1980 *(supra,* at 812-813).

During the second trial, someone representing himself to be a correction officer at the facility holding defendant made phone calls to 6 jurors and 2 alternates. The other jurors were either out at that time, had an unlisted number, a number listed in someone else's name or a disconnected phone. All jurors contacted were told they should find defendant guilty, and they immediately reported such phone calls to County Court. At the completion of his second trial, defendant was again convicted of murder in the first degree under former Penal Law of 1909 § 1044 and sentenced to life imprisonment, with County Court expressly ruling that the sentence would run consecutively to a prison term defendant was then serving. Defendant, who appeared *pro se* at trial, then moved to have his sentence redetermined since, he argued, the imposition of consecutive sentences after his second trial penalized him with a harsher sentence for bringing his appeal because no explicit determination that the sentence was consecutive had been made at the first trial. County Court denied the motion. A Justice of this court granted permission to appeal the adverse resentencing determination and defendant brings the instant appeal.

■ Defendant's principal contention on this appeal is that the People failed to produce sufficient evidence to corroborate his accomplice's testimony. We disagree. By statute, a defendant may not be convicted solely upon accomplice testimony. It must be corroborated by evidence "tending to connect the defendant with the commission of such offense" (CPL 60.22 [1]). The law views the testimony of an accomplice with a "suspicious eye" *(People v Berger,* 52 NY2d 214, 218; *see, People v Dory,* 59 NY2d 121, 128), especially where there is a possibility that the testimony is given to curry favor with the prosecution, and even more particularly when the testimony is given under a promise of leniency *(see, People v Moses,* 63 NY2d 299, 305-306). The corroboration must consist of "evidence from an independent source of some material fact tending to show that defendant was implicated in the crime" *(People v Kress,* 284 NY 452, 460). This does not mean, however, that the corroborative evidence must prove that

defendant committed the crime *(People v Glasper,* 52 NY2d 970, 971; *People v Cunningham,* 48 NY2d 938, 940). It is sufficient if the corroborative proof connects defendant with the crime in such a way that the jury may be reasonably satisfied that the accomplice's testimony is truthful *(People v Daniels,* 37 NY2d 624, 630; *see, People v Springer,* 127 AD2d 250, 255-256). Moreover, the elements of independent proof are to be considered cumulatively and not in isolation *(see, People v Hudson,* 51 NY2d 233, 240), for matters of seeming insignificance "may so harmonize with the accomplice's narrative as to have a tendency to furnish the necessary connection between defendant and the crime" *(People v Dixon,* 231 NY 111, 117).

■ ■ Initially, since defendant's new trial demands a de novo review of evidence therein produced, we reject the People's argument that this court has already passed upon the sufficiency of the corroboration. Nevertheless, measured by the foregoing criteria, we are of the view that there was sufficient corroboration of Salvatore Sinno's testimony to sustain the conviction. Viewing the evidence in a light most favorable to the People *(see, People v Smith,* 55 NY2d 945, 947), John Nadratowski's testimony provides a sufficient basis for the jury to evaluate Sinno's veracity. The account of a farmer happening upon the conspirator's automobile, the sounds of shoveling as they dug a grave, the license plate number of the white Chevrolet given to the State Police weeks after the June 1961 murder, as well as Nadratowski's positive identification of Sinno and defendant made from photographs at that time, amply supply corroboration of the details Sinno testified to 21 years later, particularly since Sinno and Nadratowski had no subsequent contact. The evidence cumulatively was sufficient to connect defendant to the commission of the crime and satisfy the jury that the accomplice was telling the truth *(see, People v Shelby,* 111 AD2d 1038; *People v Van Skiver,* 111 AD2d 1032).

■ We find similarly unavailing defendant's argument that County Court's corroboration charge was in error. Defendant argues that County Court should have specifically instructed the jury that the corroborating evidence "must be truly independent of the accomplice testimony and may not rely upon such testimony to invest it with weight and probative value" *(People v Lawson,* 112 AD2d 457, 459). Since defendant failed to preserve such issue for appellate review *(see,* CPL 470.05 [2]; *People v Patterson,* 39 NY2d 288, 294, *affd* 432 US 197), and

since the charge as given does not fall within the narrow statutory or constitutional exception allowing appellate review *(see, People v Thomas,* 50 NY2d 467, 471), no appeal lies. Nevertheless, we have exercised our discretion in the interest of justice *(see,* CPL 470.15 [3] [c]; *People v Robinson,* 36 NY2d 224, 228, *remittitur amended* 37 NY2d 784) and reviewed the challenged instructions. In our view, County Court's recitation of the law on the corroboration of accomplice testimony was adequate for it accurately stated the "material legal principles applicable to the particular case" (CPL 300.10 [2]), and it informed the jury that it was for them to decide whether the corroborative testimony was sufficient *(see, People v Tyler,* 111 AD2d 528, 530) and whether, if true, it tended to connect defendant with the commission of the crime *(see, People v Davila,* 108 AD2d 108, 115).

Finally, with regard to the charge, defendant argues that County Court usurped the jury's function by passing upon the sufficiency of the corroborative testimony when it charged "[t]he testimony of John Nadratowski, if it is believed by you, *may* constitute corroborative evidence in this case" (emphasis supplied). Once again, this issue has not been preserved for appellate review *(see,* CPL 470.05 [2]). In any event, in our view, County Court's instructions did not amount to an exhortation that Nadratowski's testimony was sufficient to satisfy the corroboration requirement. The ambiguous "may" is immediately preceded by express instructions for the jury to determine both credibility and connection with the crime. The charge clearly left the question of credibility and corroboration to the jury *(see, People v Daniels,* 37 NY2d 624, 630, *supra).* The case of *People v Stafford* (57 AD2d 965), relied upon by defendant, is distinguishable. There, reversal was required because of the court's bold directive: "If you find * * * defendant was with Henry * * * that would be sufficient to corroborate" *(supra,* at 966).

Defendant next argues that the prosecutor's summation was unduly prejudicial, contending that a variety of errors deprived him of a right to a fair trial. We disagree. Although the prosecutor first struck a decidedly emotional tone, thereafter, except for a few scattered references to rage, he generally stayed within the four corners of the evidence *(People v Ashwal,* 39 NY2d 105, 109; *see, People v Morgan,* 66 NY2d 255), and defendant has not demonstrated "a flagrant and pervasive pattern of prosecutorial misconduct" warranting a new trial *(People v Demming,* 116 AD2d 886, 887; *see, People v*

*Allen,* 129 AD2d 717). Moreover, improper comments made by a prosecutor during summation must be assessed for their prejudicial effect in the context of the entire trial *(see, People v Galloway,* 54 NY2d 396; *People v Brosnan,* 32 NY2d 254; *People v Marks,* 6 NY2d 67, *cert denied* 362 US 912). Measured against that standard, and coming on the heels of defendant's marathon summation which was rambling, disjointed and revolved around the theory that the prosecutor manufactured and manipulated evidence, we conclude that the challenged remarks are nothing more than fair comment on the evidence *(see, People v Anthony,* 24 NY2d 696), neither bolstering prosecution witnesses nor denigrating the defense.

█ █ Nor was the prosecutor's use of the terms "hired killer" and "shylock" prejudicial. The former term concerns the prosecutor's theory of the case and the latter was the prosecutor's response to defendant's repeated reference *(see, People v Menzel,* 124 AD2d 753; *People v Wallace,* 68 AD2d 895). Moreover, contrary to defendant's contention, the prosecutor did not improperly comment on or refer to defendant's failure to testify. The prosecutor did overstep the bounds of proper advocacy when he stated: "if Sinno had known that back in '61, if [defendant] had known that back in '61, John Nadratowski * * * may very well not have been in this courtroom". While this statement was not objected to, it constitutes the only real prosecutorial misconduct during summation. We conclude, however, that in the context of the entire summation, the quantum of misconduct was not great enough to deprive defendant of a fair trial and the error can only be considered harmless *(see, People v Crimmins,* 36 NY2d 230; *see also, People v Galloway,* 54 NY2d 396, *supra).* Moreover, the prejudicial effect of any prosecutorial excesses was minimized by the curative instructions of County Court, urging the jury to weigh the testimony of the witnesses while giving no evidentiary weight to remarks during summation *(see, People v Priester,* 102 AD2d 942, 943; *People v Patterson,* 83 AD2d 691, 692).

█ Defendant next urges that he was deprived of a fair trial and due process of law as a result of improper third-party communications with several jurors. Upon examination by County Court, each of the jurors who had been called clearly stated that he had not formed an opinion as a result of the call and that he would not allow the caller to influence his verdict. "This cures the possible harm under the accepted precedents because the questioning of the jurors and admoni-

tion to them serve a real purpose in drawing their attention to the unfairness of their considering anything but the record evidence" *(People v Sher,* 24 NY2d 454, 457, *remittitur amended* 24 NY2d 1031, *cert denied* 396 US 837). We are not persuaded by defendant's attempts to distinguish *People v Sher (supra).* Surely, it came as no surprise to those jurors contacted that defendant's guilt was at issue and that he was incarcerated. Moreover, defendant's reliance on *Parker v Gladden* (385 US 363) is misplaced since in that case a bailiff, ostensibly clothed with the authority of a court officer, sought to influence the verdict and thereby denied the defendant due process *(see, People v Sher, supra,* at 458). In our view, County Court did not abuse its discretion in denying defendant's motion for a mistrial, having satisfied itself that the jurors could remain impartial.

█ Also unconvincing is defendant's argument that his sentence to a consecutive term of imprisonment was improper. It is fundamental that where a defendant wins a new trial and is again convicted, the new sentence cannot be more severe than that previously imposed in the absence of "identifiable conduct", not present here, on the part of defendant occurring after the imposition of the original sentence justifying a more severe sentence *(see, North Carolina v Pearce,* 395 US 711, 726; *People v Williams,* 34 NY2d 657). The issue thus distills to whether County Court's silence in 1978 had the effect of imposing a concurrent or consecutive sentence. We conclude that the life sentence imposed in 1978 was consecutive to the 20-to-30-year sentence of imprisonment for extortion imposed in 1967 and, accordingly, the consecutive sentence imposed here was no harsher than that previously imposed. Contrary to defendant's assertion, Penal Law § 70.25 (1) (a) does not control because offenses committed prior to September 1, 1967, the effective date of the current Penal Law, "must be construed and punished according to the provisions of law existing at the time of the commission thereof in the same manner as if [that] chapter had not been enacted" (Penal Law § 5.05 [3]; *see, People v Pepples,* 27 NY2d 785; *People v Millard,* 32 AD2d 676). Under the law in effect in 1961, there was no " 'presumption of concurrence' " *(Matter of Browne v New York State Bd. of Parole,* 10 NY2d 116, 120), and the trial court's silence as to whether sentences for unrelated convictions were to run concurrently or consecutively signified that they should run consecutively *(see, People v Callahan,* 30 AD2d 691; *People v Colavito,* 28 AD2d 548;

Hechtman, Practice Commentaries, McKinney's Cons Laws of NY, former Book 39, Penal Law § 70.25, at 235 [1975]). Finally, the alleged determination by the Department of Correctional Services that the sentences are concurrent, relied upon heavily by defendant, is not binding upon the courts. Rather, the Department is conclusively bound by the commitment papers and may not change the provisions of the sentence therein *(see, Mullen v State of New York,* 122 AD2d 300, 302, *cert denied* — US —, 107 S Ct 1586).

KANE, J. P., WEISS, LEVINE and HARVEY, JJ., concur.

Judgment and order affirmed.