THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
MICHAEL BESSARD, Appellant.

Third Department, July 13, 1989

**APPEARANCES OF COUNSEL**

*Paul L. Gruner (Denise Y. Dourdeville* of counsel), for appellant.

*Michael Kavanagh, District Attorney (John Prizzia* of counsel), for respondent.

## OPINION OF THE COURT

LEVINE, J.

Defendant was convicted of murdering Charles Lindsay during the evening of July 4, 1987 by shooting him twice with a shotgun. The principal evidence against defendant was the testimony of Ronald Newton and forensic evidence establishing that the spent shotgun shell found by the victim's body was fired by a gun bearing defendant's fingerprint seized at his apartment. Newton testified that in the late evening of July 4, 1987 he was visiting his brother, who lived in the same apartment building as defendant, and defendant, a friend of Newton, was present. He and defendant discussed obtaining some cocaine and drove to the home of Richard Mathis to buy the drug. After obtaining the cocaine and using some of it with Mathis, they left to drive home. En route, defendant related to Newton that, earlier that evening, he had shot the victim over an aborted cocaine transaction in which he gave the victim $20, but did not receive the drugs.

On appeal defendant raises three points. First, he urges that reversal is required because County Court failed to conduct a hearing on his formal motion challenging the jury panel for having inadequate representation of blacks and other minorities and a grossly disproportionate number of persons over the age of 21 (see, CPL 270.10). In neither the affidavit in support of the motion nor the arguments made thereon, however, did defendant set forth any concrete facts, rather than bare conclusions, concerning an alleged discriminatory process of panel selection or demographic comparisons, from which the requisite inference could be drawn of an intentional and systematic exclusion of minorities (see, People v Parks, 41 NY2d 36, 43). Without such a factual showing, County Court was not required to hold a hearing before denying defendant's motion (see, People v Tucker, 115 AD2d 175, lv denied 67 NY2d 766; People v Lanahan, 96 AD2d 675, 676). We note also that denial of an identical challenge to the Ulster County jury selection process, after a full hearing, was recently upheld by this court (People v Gregory ZZ., 134 AD2d 814, 815, lv denied 71 NY2d 905).

Defendant next argues that, as a black person, he was denied his constitutional right to equal protection by the prosecution's utilization of peremptory challenges to exclude black and Hispanic jurors from sitting on his case. Some 63 prospective jurors were examined during voir dire, of which

there were 2 black women, 2 black men and 1 Hispanic woman. One black man was excused for cause by consent. The remaining minority jurors were excluded among the 14 peremptory challenges the prosecution exercised. The defense, in expressing objections during voir dire, did not point to any factually specific circumstances giving rise to an inference that the jurors were excluded because of their race or ethnic origin, such as, that their backgrounds and responses to questions would, if anything, suggest their favorable attitude toward the prosecution *(see, People v Scott,* 70 NY2d 420, 425). However, the exclusion of all three remaining blacks on the panel does evince a " 'pattern' of strikes against black jurors included in the particular venire [which] might give rise to an inference of discrimination" *(Batson v Kentucky,* 476 US 79, 97). Therefore, the burden shifted to the prosecution to rebut this prima facie showing of racial discrimination by coming forward with a neutral explanation *(supra,* at 98; *People v Miller,* 144 AD2d 94, 96).

The prosecutor's racially neutral explanation for excusing the three black jurors was severalfold. First, he pointed out that the victim was also black, thus dispelling any conjecture that black jurors would favor defendant. Second, it was asserted that he had devised an ideal juror profile for this particular case of older persons, coming from the same general locale within the county where the murder took place, preferably males rather than females, since they were more likely to have some familiarity with firearms and, therefore, a better comprehension of the forensic evidence regarding defendant's shotgun. The two black women did not fit this profile. Additionally, one of the women exhibited a demeanor the prosecutor found disconcerting for a murder case, in laughing and giggling with two other female jurors (who were also excused) during voir dire and appearing to him oversensitive to inquiries concerning the factor of racial bias. The bona fides of these rationales were substantiated by the prosecutor's pointing out that white women sharing the same characteristics were challenged in the same rounds of questioning as the black women who were excused. Moreover, the prosecutor explained his departure from the profile with respect to two white women who were selected in the same rounds, in that one had been a juror in a prior successful prosecution and the other had some acquaintance at work with two prosecution witnesses. As to the black male prospective juror, the reason advanced for excusing him was that he had been a defense

witness in a prior case where there had been a sharp conflict in the testimony of prosecution and defense witnesses.

■ The foregoing explanations for excluding blacks from the jury were clear, reasonably specific and legitimate *(see, Batson v Kentucky, supra,* at 98, n 20).* Excusing blacks or members of other historically disadvantaged classes on the basis of a neutral juror profile has previously been approved by the courts *(see, People v Merkle,* 143 AD2d 145, 146, *lv denied* 73 NY2d 858; *People v Gregory ZZ., supra,* at 816). Although defendant's assertion on appeal may be correct, that the prosecution deviated from its juror profile in subsequent selections of jurors and alternates, this apparent inconsistency was not alluded to at the time and, hence, the prosecution was not given the opportunity to explain. In any event, once the prosecution has advanced a sufficient neutral explanation related to the case to be tried, as it did here, the determination of whether the exclusion of black jurors was racially motivated "largely will turn on evaluation of credibility" by the trial court in its findings, and "a reviewing court ordinarily should give those findings great deference" *(Batson v Kentucky, supra,* at 98, n 21). We find no basis in the instant case not to accord such deference to County Court's rejection of defendant's claim of the prosecution's discriminatory use of its peremptive challenges.

■ Finally, defendant contends that cumulative errors at the trial, consisting of rulings by the court and prosecutorial misconduct, require reversal. Again, we are unpersuaded. Only some of the errors merit discussion. Defendant points to County Court's refusal to give a missing witness charge concerning the failure of the prosecution to call Richard Mathis to the stand. Defendant argues that Mathis presumably could have corroborated Ronald Newton's testimony that the occasion of defendant's admission of the murder to him was the car trip to Mathis to buy drugs. A party seeking a missing witness charge establishes a prima facie right to it by showing that the unproduced witness is knowledgeable about a material issue and would be expected to testify favorably to the opposing party *(People v Gonzalez,* 68 NY2d 424, 428). Then, the party opposing the charge can only avoid it by demonstrating, *inter alia,* that the witness's testimony would be immaterial or merely cumulative, that the witness is unavailable, or is not under that party's control such that he would not be expected to testify in that party's favor *(supra).* Availability generally refers to the ability of a party physically to

produce the witness in court *(supra)*. The issue of control generally pertains to whether the absent witness, by reason of status, relationship or other circumstances, would be expected to testify favorably to the party opposing the charge and to be hostile to the party seeking the charge *(supra,* at 428-429). Here, there is nothing in the record tending even to suggest that Mathis would be inclined to favor the prosecution. That there may have been a casual friendship between Newton and Mathis and a relationship of customer to drug supplier is not sufficient to show control *(cf., supra,* at 431). There is no evidence of any cooperation by Mathis with law enforcement authorities. Thus, there is no reason to conclude that Mathis would have been a favorable prosecution witness. Indeed, in view of Newton's testimony concerning the purpose of the visit to Mathis and what then transpired, the most likely result of calling Mathis as a witness would have been his refusal to testify on self-incrimination grounds.

█ As to the claim of the prosecutor's misconduct, we note that the comment by him in his opening statement, in substance that defendant had not gotten away with the murder because he was indicted, was promptly and emphatically addressed by County Court, even eliciting an apology from the prosecution. As to the prosecutor's characterization, in summation, of defendant's arguments as a smoke screen, they were in fair response to speculative points made in the defense's summation *(see, People v Galloway,* 54 NY2d 396, 399). Likewise, the prosecution's attack in summation on defendant's credibility as a witness was more than evenly matched by the vituperative denigration of Newton in the defense's summation *(see, People v Konigsberg,* 137 AD2d 142, 148, *lv denied* 72 NY2d 912). While the prosecution's statement that an acquittal of defendant would result in "giv[ing] him all his property back, including the shotgun * * * [a]nd walk[ing] him right out the door" was improper and the objection thereto should have been sustained, we find this the only instance where the bounds of fair advocacy were exceeded in the summation. Apart from this, the prosecutor's remarks were relevant comments bearing on legitimate issues in the case and tailored to evidence in the record. Thus, in its own context as well as that of the outspokenly vigorous summation on behalf of defendant, any prosecutorial impropriety in summation cannot be considered prejudicial so as to require a

reversal *(see, People v Galloway, supra,* at 401; *People v Konigsberg, supra,* at 148). From our review of the remaining objections raised by defendant as to the conduct of the trial, we similarly conclude that the errors, if any, were harmless.

MAHONEY, P. J., KANE, WEISS and HARVEY, JJ., concur.

Judgment affirmed.