THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROBERT O. BENNETT, Appellant.

Third Department, July 25, 1991

## APPEARANCES OF COUNSEL

*O'Connell & Aronowitz (Stephen R. Coffey* of counsel), for appellant.

*David A. Wait, District Attorney,* for respondent.

### OPINION OF THE COURT

HARVEY, J.

In January 1989, a Grand Jury handed down an indictment charging defendant, a former State Trooper, with the following crimes: one count of rape in the first degree, two counts of sodomy in the first degree, one count of sexual abuse in the first degree, one count of coercion in the first degree, one count of unlawful imprisonment in the second degree and one count of official misconduct. These charges stemmed from an incident occurring on September 10, 1988. At trial, the victim described the events that evening as follows.

The victim, a married college professor, related that she had been traveling in her rented vehicle from the Ithaca area to the Lake George area in order to attend a family wedding. As she was traveling northbound on Interstate Route 87 in the area of the Town of Malta, Saratoga County, she was pulled over by defendant, who was in uniform and operating a State Police vehicle. Defendant approached the vehicle and asked for the victim's license and registration, which she gave to him. Defendant told the victim that she had failed to signal when changing lanes and had been driving erratically. He instructed her to get out of her car and walk a straight line toward his car. She complied and he then told her to get into his car.

Defendant then allegedly told her she could be in serious trouble and referred to possible driving while intoxicated charges that could be brought against her. Defendant instructed the victim, who apparently had consumed one beer with lunch several hours earlier, to blow in his face. After she did so a second time at defendant's command, defendant put his mouth on hers, drew her toward him and put his hand down her blouse. When the victim asked him what he was doing, defendant put his mouth on hers again, unfastened her

pants and put his hand between her legs. The victim, who had observed that defendant had a gun, froze in fear. Defendant then allegedly told the victim that he was going to "make it" with her and that he had to go to the State Police barracks to get a condom. Apparently thinking she might be able to get away, the victim suggested that she drive her car. Defendant agreed but retained her license and registration and directed her to follow him. Fearing he would follow her if she escaped, she complied. Upon arriving at the barracks, defendant bodily took the victim out of her car and put her in his car and then went into the barracks. The victim stated she was frozen with fear at that time since she did not know if defendant had friends in the barracks who knew what he was doing. Defendant returned to his car and drove to a deserted area. According to the victim, defendant then raped, sodomized and sexually assaulted her. Afterward, defendant drove the victim back to her car and directed her toward her destination.

Thereafter, the victim proceeded to the family wedding but apparently did not tell anyone there about the assault. After being unable to eat or sleep for two days, she ultimately called a rape crisis hotline. After some time, she gave the rape crisis center permission to make a report to the State Police. Defendant was eventually indicted, tried and found guilty on all counts. Following imposition of sentence, defendant filed this appeal.

■ Initially, defendant contends that County Court erred in ruling at a pretrial *Sandoval* hearing *(People v Sandoval,* 34 NY2d 371) that if defendant chose to testify on his own behalf at trial, he would be deemed to have waived his privilege against self-incrimination with respect to pending unrelated criminal charges and would be exposed to cross-examination regarding these matters. Apparently, before the trial defendant was indicted in Albany County on unrelated charges of criminal impersonation and official misconduct stemming from an incident in which he allegedly attempted to gain information regarding the victim by representing that he was an active member of the State Police investigating a case in which the victim was a defendant. County Court ruled that defendant could be cross-examined concerning this incident if he took the stand and would not be allowed to assert his privilege against self-incrimination. Defense counsel placed upon the record that defendant's decision not to testify was specifically based upon County Court's *Sandoval* ruling pertaining to the self-incrimination issue. Accordingly, this issue

was properly preserved for our review *(see, People v Young Boom Kim,* 170 AD2d 707; *People v Scahill,* 167 AD2d 857).

■ Turning to the merits, we find that County Court erred in its *Sandoval* ruling on this point and that a new trial must be conducted. As noted by the Court of Appeals in *People v Betts* (70 NY2d 289), "a defendant is entitled to a pretrial ruling, based on the assertion of the privilege against self-incrimination, precluding the prosecution from cross-examining for credibility purposes only as to pending unrelated criminal charges if defendant takes the stand as a witness at the trial" *(supra,* at 291). The court explained that allowing the general defendant witness waiver rule to apply in this situation would unduly compromise the defendant's right to testify with respect to the case on trial and simultaneously jeopardize the corresponding right not to incriminate oneself as to a pending matter *(supra,* at 295). Although on appeal the People make an attempt to argue that evidence as to the pending charges had an independent relevance aside from credibility *(see, e.g., People v Zarrelli,* 144 AD2d 819, 820, *lv denied* 73 NY2d 1024), this argument does not bear up under close scrutiny.

■ ■ It cannot be argued seriously that the circumstances underlying the pending charges were not collateral, but were instead material and relevant to the issues before the court where defendant was being tried *(see, e.g., supra; People v Rossi,* 96 AD2d 646, 647). Further, although the People claim that the evidence of the pending charges was relevant to show defendant's consciousness of guilt, we cannot agree. The underlying facts in the pending indictment hardly constitute the kind of behavior traditionally associated with consciousness of guilt *(see, e.g., People v Sherman,* 156 AD2d 889, *lv denied* 75 NY2d 970 [threatening victim]; *People v Rundblad,* 154 AD2d 746 [refusal to submit to blood test]; *see also, People v Leyra,* 1 NY2d 199, 208 [false explanations or alibis and concealment or destruction of evidence]). Further, we note here that it is alleged that defendant reportedly committed the actions described in the indictment in an attempt to gain information to find evidence to discredit the victim and support his claims of *innocence.* While the People also contend that any error committed by County Court with respect to its *Sandoval* ruling can be deemed harmless, we cannot agree in light of defendant's decision not to take the stand *(see, People v Betts, supra).*

■ Inasmuch as a new trial must be held, we have considered the remaining contentions raised by defendant. The argument that County Court erred in admitting expert testimony regarding rape trauma syndrome at trial is rejected. The Court of Appeals has stated that evidence of rape trauma syndrome is relevant to explain what may seem to be unusual behavior by a rape victim and dispel misconceptions that jurors might possess regarding the ordinary responses of rape victims (People v Taylor, 75 NY2d 277, 293). While it is true that such evidence cannot be offered to merely show that behavior exhibited by a victim was consistent with a set of symptoms and patterns of response commonly associated with women who had been forcibly attacked (supra, at 284), this was clearly not the situation presented in the case at bar. Here, the prosecution did not seek to introduce expert testimony to show that the victim's inability to sleep or eat was characteristic of a rape victim, but, rather, sought to utilize testimony pertaining to rape trauma syndrome to explain behavior on the part of the victim (such as, for example, following defendant to the barracks in her car and not immediately reporting the incident) which might appear unusual to the lay jury not ordinarily familiar with the patterns of response exhibited by rape victims.

Additionally, it should be noted that the expert in this case was not allowed to testify until well after the cross-examination of the victim was finished. Accordingly, there can be no argument that the expert's testimony was used to permit improper bolstering (see, e.g., People v Cruickshank, 105 AD2d 325, 331, affd sub nom. People v Dawn Maria C., 67 NY2d 625). Further, County Court properly instructed the jury regarding the expert testimony (see, People v Whitehead, 142 AD2d 745, 746). Therefore, we find no error in County Court's rulings in this regard.*

■ Finally, County Court did not err in refusing to give a missing witness charge with respect to the victim's parents and various personnel of the rape crisis center who did not testify at trial. Not only did defendant fail to promptly notify

---

* We also reject as specious defendant's argument that the expert was improperly permitted to testify regarding the reactions of victims *prior* to the actual rape, rather than in *response* to rape. Rape trauma syndrome pertains to the reactions of the victim throughout an assault and, according to the version of the events relayed by the victim in the instant case, the assault began here when defendant ordered her into his car and began fondling her without permission.

the court prior to the close of proof that there were uncalled material witnesses *(see, People v Politi,* 161 AD2d 1045, 1046, *lv denied* 76 NY2d 863), defendant failed to make a prima facie showing that witnesses under the prosecution's control were "in a position to give *material* evidence, relevant to a sharply contested factual issue regarding the actual criminal transaction" *(People v Clark,* 128 AD2d 270, 272 [emphasis in original]) that was noncumulative and favorable to his case *(see, People v Politi, supra; see also, People v Scahill, supra; People v Bessard,* 148 AD2d 49, 53, *lv denied* 74 NY2d 845).

CREW III, J. (dissenting). We concur with the majority that County Court did not err in admitting expert testimony regarding rape trauma syndrome and in refusing to give a missing witness charge. However, we respectfully dissent with its conclusion that the holding in *People v Betts* (70 NY2d 289) requires reversal. In our view *Betts* stands for the proposition that a defendant does not, by testifying, automatically waive his privilege against self-incrimination with respect to questions, posed for impeachment purposes, concerning pending unrelated criminal charges. *Betts* does not preclude questions concerning pending unrelated criminal charges that are relevant to the charge on trial *(supra,* at 292-293; *see, People v Shapiro,* 308 NY 453; *People v Johnston,* 228 NY 332; *People v Tice,* 131 NY 651). While the underlying facts in the pending indictment may not constitute the kind of behavior traditionally associated with consciousness of guilt, as asserted by the majority, that is no reason to preclude the inquiry if a jury could reasonably infer consciousness of guilt by reason of the defendant's conduct *(see, e.g., People v Yazum,* 13 NY2d 302; Richardson, Evidence § 167, at 134-136 [Prince 10th ed]).

The majority seems to place undue emphasis on defendant's assertion that his motive for his conduct was to obtain evidence to discredit the victim and support his claim of innocence. We concede that is a possibility. Equally inferable is that defendant sought, by criminal means, to obtain information about the victim in order to intimidate her which would be probative of a consciousness of guilt. The courts have always recognized the ambiguity of conduct which may or may not give rise to an inference of consciousness of guilt. Their response has not been to preclude such evidence, but rather to closely instruct the jury as to its weakness as an indication of guilt of the crime charged *(see, People v Yazum, supra,* at 304). So while the courts have recognized the weak-

ness of this type of evidence, where, as here, there is sufficient other evidence of defendant's guilt, such circumstantial evidence is admissible *(see, People v Leyra,* 1 NY2d 199, 209-210). We would, therefore, affirm the judgment of conviction.

CASEY, J. P., and WEISS, J., concur with HARVEY, J.; CREW III and MIKOLL, JJ., dissent in an opinion by CREW III, J.

Ordered that the judgment is reversed, on the law, and matter remitted to the County Court of Saratoga County for further proceedings not inconsistent with this court's decision.