OPINION OF THE COURT
Kristin Booth Glen, J.
This in limine motion raises a question of first impression concerning the admissibility of expert testimony on rape trauma syndrome (RTS) in a civil action to recover for personal injury.[1] Plaintiff here claims to have been the victim of a sexual assault by defendant Soto, an employee of defendant lulo. Shortly prior to trial, plaintiff’s attorney notified defendants’ counsel that he intended to call an expert witness to testify about RTS. Defendants moved to preclude such testimony pursuant to the medical exchange rule, Uniform Rules for Trial Courts (22 NYCRR) § 202.17 (h).[2] When informed that the proposed expert witness was not a doctor, but rather an M.S.W. with extensive experience in a rape crisis center, the defendants moved in the alternative to preclude her testimony for lack of the requisite expertise, and particularly because she is neither a medical doctor nor a Ph D. in psychology. Both arguments fail because they misunderstand the nature of the testimony sought to be adduced, and the purpose for which it is offered — or at least for which this court will permit it.
In the landmark decision of People v Taylor (75 NY2d 277, *81 supra [1990]), the Court of Appeals upheld the admissibility of expert testimony concerning RTS in appropriate cases, finding that the syndrome is sufficiently accepted in the scientific community to meet the traditional test of Frye v United States (293 F 1013 [DC Cir 1923]) (People v Taylor, at 285). It then considered whether testimony about RTS was sufficiently outside the knowledge of an ordinary juror or trier of fact that such expert testimony "would help to clarify an issue calling for professional or technical knowledge, possessed by the expert and beyond the ken of the typical juror” (supra, at 288, citing De Long v County of Erie, 60 NY2d 296, 307 [1983]),[3] and analogizing to its prior decision upholding the admissibility of expert testimony on the sexually abused child syndrome (Matter of Nicole V., 71 NY2d 112 [1987]). The Court found that, like child sexual abuse, "rape is a crime that is permeated by misconceptions” (People v Taylor, at 288),[4] and concluded: "Because cultural myths still affect common understanding of rape and rape victims and because experts have been studying the effects of rape upon its victims only since the 1970’s, we believe that patterns of response among rape victims are not within the ordinary understanding of the lay juror. For that reason, we conclude that introduction of expert testimony describing rape trauma syndrome may under certain circumstances assist a lay jury in deciding issues in a rape trial.” (Supra, at 289.)
Although the issue in Taylor (supra), and in the majority of cases which have followed was the rape victim’s delay in reporting the assault, a familiar symptom of RTS, the Court of Appeals also noted a number of other components of the syndrome, including postattack physical manifestations such as "tension headaches, fatigue, or disturbed sleep patterns” *82 and emotional reactions such as “fear, humiliation, embarrassment, fear of violence and death, and self-blame” as well as more long term symptoms such as “the occurrence of nightmares and the development of phobias that relate to the circumstances of the rape.” (Supra, 75 NY2d, at 285-286.) In addition, the Court noted that a victim might well “persistently reexperience the traumatic event in a number of ways, as through dreams, flashbacks, hallucinations, or intense distress at exposure to events that resemble or symbolize the traumatic event.” (Supra, at 287, citing American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders 247, 248 [3d ed rev 1987].)
It is precisely these aftereffects of sexual assault about which plaintiff here wishes to offer expert testimony. She seeks to recover damages not only for the attack itself, but for what she claims are the continuing sequelae which persist to this day, some nine years after the event. It is not her contention that she experiences fear or nightmares on a regular basis, but rather that, once the acute, posttraumatic phase concluded, such symptoms have arisen intensely, but only from time to time, based on particular stimuli such as reading or hearing about rapes or sexual attacks on other women. Expert testimony about RTS, in demonstrating that such reactions are common among victims of sexual assault, will be useful and necessary in dispelling what may be the jury’s more common notion that a victim of assault will, after a reasonable period of time, “get over” the attack and cease to have symptoms relating to it. (See, e.g., Frazier and Borgida, Juror Common Understanding and the Admissibility of Rape Trauma Syndrome Evidence in Court, 12 L & Hum Behav 101 [1988].) It thus clearly meets the Taylor test for admissibility.[5]
*83 The fact that the proposed expert witness on RTS is not a medical doctor or a Ph D. in psychology is also not fatal to allowing her testimony. Consistent with general evidentiary rules in which it is the actual expertise of a witness in a particular area, rather than credentials taken apart from knowledge and experience (see, Matott v Ward, 48 NY2d 455 [1979]), [6] the Third Department has held that testimony of an experienced rape crisis advocate without formal medical or academic credentials is admissible to explain the behavior exhibited by the victim of a sexual assault in a criminal case. (People v Page, 166 AD2d 886 [4th Dept 1990]; see also, Matter of Nicole V., supra [expert had M.S.W., was director of two Bronx offices of the Victim Services Agency and had counseled sexually abused children for 2 Vi years].)
This welcome recognition by the appellate courts is particularly important given the medical profession’s long-standing lack of attention to health-related aspects of violence against women. (See generally, Scully, Men Who Control Women’s Health: The Miseducation of Obstetrician Gynecologists.)[7] Although defendants clearly have the right to voir dire the proposed witness prior to her testimony, her curriculum vitae, demonstrating more than a decade as director of and consultant to the St. Vincent’s Hospital Rape Crisis Center as well as various consultancies in the criminal justice and Family Court systems, suggests that she is eminently qualified to testify on RTS.
And, although this has not been raised by defendants, it is of no matter that the sexual assault in this case involved an uncompleted, rather than a consummated rape. Courts have appropriately recognized that RTS includes all of the reactions *84 of the victim to a sexual assault, including reactions prior to the assault itself (e.g., People v Bennett, 169 AD2d 369, 374 [3d Dept 1991]).
The fact that the witness is not a doctor, and that her testimony will not be offered — or permitted — to establish the injuries actually suffered by the plaintiff, but rather to explain their persistence and pattern of occurrence so long after the fact (assuming, of course, that the jury believes the plaintiffs testimony about her symptoms), demonstrates the inapplicability of the medical exchange rules in this case. It is not only that the witness is not a doctor, but the nature of her proposed testimony which takes it outside both the explicit language and rationale of that rule.
Consistent with this holding, the expert will be permitted to testify about RTS in general, and to give an opinion, based on the hospital records and an appropriate hypothetical, that the plaintiffs symptoms are consistent with RTS.[8] The jury will be instructed that it may consider her testimony in deciding whether to accept or reject the plaintiffs’ testimony about the duration and severity of her nightmares and other episodes of fearfulness, but that the expert’s testimony may not be considered in determining whether such episodes occur. Nor, consistent with Taylor (supra), may her testimony be considered to determine whether the sexual assault complained of by plaintiff, and denied by defendant Soto, actually occurred.
Chief Judge Wachtler’s thoughtful and scholarly opinion in Taylor (supra) clearly supports its equal applicability in civil cases and compels a holding of both relevance and need in this case. The same reasoning necessary to insure that victims of sexual assault are given a fair hearing in the criminal justice system requires that their accounts of injury and the psychic and emotional damage done to them be given an equally understanding and informed hearing when they seek recompense in our civil courts.

. Only one civil New York case has been found which dealt in any way with RTS, Matter of Howe v Village of Trumansburg (169 AD2d 1018 [3d Dept 1991]). The issue there was the reasonableness of the petitioner’s excuse for her delay in filing a notice of claim pursuant to General Municipal Law § 50-e (5). The Third Department, citing People v Taylor (75 NY2d 277), upheld the filing of a late claim "in light of the evidence that petitioner was all but incapacitated during the relevant time due to post-traumatic stress disorder as a result of [her] alleged rape.” (Matter of Howe v Village of Trumansburg, supra, at 1019.)

. The rule provides, inter alia, that "no party shall be permitted to offer any evidence of injuries or conditions not set forth or put in issue in the respective medical reports previously exchanged, nor will the court hear the testimony of any physicians whose medical reports have not been served as provided by this rule.” The rule excludes so-called "treating physicians” and is aimed precisely at avoiding the surprise inherent in last minute production of expert medical witnesses.

. The De Long decision (supra) signaled a change in the standard for the admission of expert testimony from a requirement that such testimony be "necessary to the trier of fact in the evaluation of evidence” (People v Berrios, 150 Misc 2d 229, 230, citing Dougherty v Milliken, 163 NY 527 [1900]; Richardson, Evidence § 367 [Prince 10th ed]; Fisch, New York Evidence § 412 [2d ed]) to a more liberal "helpfulness” standard (see, e.g., Richardson, Evidence § 367 [Prince 10th ed, 1972-1985 Cum Supp]; Fisch, New York Evidence § 412 [2d ed, Cum Supp]).

. Similarly, courts have admitted expert testimony about battered women’s syndrome (see, eg., State of New Jersey v Kelly, 97 NJ 178 [1984]; People v Torres, 128 Misc 2d 129 [Sup Ct, Bronx County 1985]) as a means of overcoming the marginalization of women’s experience from general public perception. (See, Murphy, Assisting the Jury in Understanding Victimization: Expert Psychological Testimony on Battered Woman Syndrome and Rape Trauma Syndrome, 25 Colum J L & Social Prob 277 [1992].)

. The Taylor Court (supra) found that "the reason why the testimony is offered will determine its helpfulness, its relevance and its potential for prejudice.” (Supra, 75 NY2d, at 292.) Thus, in Taylor itself, the Court found RTS expert testimony relevant in explaining the complainant’s initial failure to identify the defendant as well as evidence that the complainant had not seemed upset following the attack. The RTS evidence was, according to the Court, "relevant to dispel misconceptions that jurors might possess regarding the ordinary responses of rape victims in the first hours after their attack” (at 293). In the companion case People v Banks (75 NY2d 277 [1990]), testimony about RTS was offered to show that subsequent to the alleged attack the complainant was demonstrating behavior consistent with patterns of response exhibited by rape victims. The purpose of the testimony was clearly to show that a rape had occurred. Such testimony, "not offered to explain behavior that might appear unusual to a lay juror not ordinarily *83 familiar with the patterns of response exhibited by rape victims” (supra, at 293) was held inadmissible, following decisions in other courts that evidence of RTS is inadmissible to prove that a rape occurred, e.g., People v Bledsoe (36 Cal 3d 236, 681 P2d 291 [1984]).

. The Court wrote: "the expert should be possessed of the requisite skill, training, education, knowledge or experience from which it can be assumed that the information imparted or the opinion rendered is reliable. (McCormick, Evidence [2d ed], § 13; see, generally, § 10; Wigmore, Evidence, vol 2, §§ 555-567; vol 7, §§ 1917-1929; Richardson, Evidence [10th ed — Prince], §§ 366-368.)” (Matott v Ward, 48 NY2d 455, 459, supra.)

. Recently there has been a dramatic change in this systemic inattention, manifested by, inter alia, the American Medical Association’s recognition that violence against women is the number one health hazard for women (see, 267 J Am Med Assn No. 23 [June 17, 1992]; Smolowe, What the Doctor Should Do, Time, June 29, 1992, at 57).

. Defendants argue that because the hospital records only contain information about bruises and contusions, the expert should not be permitted to opine about psychological or emotional injury. This is, as I have already discussed, not the gravamen of the proposed testimony, and she will not be permitted to testify that the plaintiff actually suffers from any particular injury, whether based on the hospital records, the hypothetical, or anything else.