■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v SETH D. DOLPHY, Appellant. [685 NYS2d 485] —Spain, J. Appeal from a judgment of the County Court of Broome County (Smith, J.), rendered October 9, 1997, upon a verdict convicting defendant of the crimes of criminal possession of a controlled substance in the third degree, criminal possession of a con-

trolled substance in the fourth degree, criminal possession of a weapon in the second degree, criminal possession of a weapon in the third degree and attempted assault in the first degree.

Following a jury trial, defendant was convicted as charged and was sentenced as a second violent felony offender to concurrent terms of imprisonment of 6 to 12 years for his conviction of criminal possession of a controlled substance in the third degree and 4 to 8 years for his conviction of criminal possession of a controlled substance in the fourth degree. Defendant was also sentenced to a term of imprisonment of 10 years for his conviction of criminal possession of a weapon in the second degree, 10 years for his conviction of attempted assault in the first degree and 5 years for his conviction of criminal possession of a weapon in the third degree. These latter three sentences are to run concurrent to each other, but consecutive to defendant's sentences on the drug convictions. Defendant appeals.

We affirm. Initially, we reject defendant's contention that the prosecutor's use of a peremptory challenge to exclude the only African American on the jury panel violated his equal protection rights under the 14th Amendment of the US Constitution (*see, Batson v Kentucky*, 476 US 79). Defendant's counsel challenged the prosecutor's strike of the juror in question based on the fact that defendant was an African American and that the juror was the only African-American person on the jury panel. County Court, noting that the juror was the only African-American juror and that the juror properly answered voir dire questions, held that defendant had made a sufficient prima facie showing to shift the burden to the prosecutor to put forward a race neutral explanation for the strike (*see, Batson v Kentucky, supra*). The prosecutor, in response to the *Batson* challenge, stated that he struck the juror based on the fact that she was overweight. As a matter of practice, the prosecutor stated that, based on his own personal jury criteria, he omitted obese people based on his past experience that "heavy-set people tend to be very sympathetic toward any defendant". County Court found the explanation to be race neutral and denied defendant's request for a mistrial.

In *Batson v Kentucky* (*supra*), the Supreme Court determined that the Equal Protection Clause of the 14th Amendment prohibits peremptory challenges on the basis of race (*see, People v Payne*, 88 NY2d 172, 181). "When one side in a criminal case claims that the other side's exercise of peremptory strikes is infected by purposeful discrimination, the trial court must engage in a three-step process. Initially, the party contesting

the peremptory challenges * * * must satisfy the court with a prima facie showing that the peremptory strikes related to the race of the jurors sought to be removed * * *. If that threshold showing is met, the lawyer seeking the excusals * * * has the burden of coming forward 'to overcome the inference of purposeful discrimination' * * * To do so, that party must voice a 'race-neutral explanation for striking the jurors in question' * * * When the proffered explanations appear facially race-neutral, the trial court must then determine 'whether the opponent of the strike * * * has proved purposeful racial discrimination' * * * The focus at this third step is whether the 'race-neutral' explanation is a mere pretext for racial discrimination * * * The ultimate burden of persuasion at the third stage rests unalterably on the party objecting to the peremptory strikes" (*id.*, at 181 [citations omitted]). Moreover, the trial court's factual assessment of the prosecutor's motivation in making the peremptory challenge is entitled to great deference on appeal since it will usually turn on evaluations of the prosecutor's credibility (*see, Batson v Kentucky, supra*, at 98, n 21; *see also, Hernandez v New York*, 500 US 352; *People v Hernandez*, 75 NY2d 350, 356; *People v Gregory ZZ.*, 134 AD2d 814, 816, *lv denied* 71 NY2d 905). Furthermore, "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike" (*Purkett v Elem*, 514 US 765, 768). In our view, the prosecutor met his burden by coming forward with a racially neutral explanation which was given credence by County Court. We reject defendant's bald contention that the explanation was pretextual in nature and, therefore, we will not disturb County Court's determination.

Next, we reject defendant's contention that the verdict was not supported by legally sufficient evidence and was against the weight of the evidence. The standard of review in determining whether the evidence adduced by the prosecution at trial is legally sufficient is, looking at the evidence in the light most favorable to the prosecution (*see, People v Harper*, 75 NY2d 313, 316; *People v Contes*, 60 NY2d 620, 621), "whether there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury * * * and as a matter of law satisfy the proof and burden requirements for every element of the crime charged" (*People v Bleakley*, 69 NY2d 490, 495 [citation omitted]; *see, People v Cabey*, 85 NY2d 417, 420). When analyzing whether the verdict was against the weight of the evidence, this Court views the evidence in a "neutral light" and makes its "own independent determination of the relative probative value of the inferences

that may be drawn from the testimony" (*People v Jefferson*, 248 AD2d 815, 817, *lv denied* 92 NY2d 926).

Here, the testimony at trial advanced that on February 26, 1997 defendant had an altercation on a street corner in the City of Binghamton, Broome County, with Steven Wade, a drug dealer, regarding drug-selling territory. Wade had engaged in selling crack cocaine out of an apartment at the location, and had warned defendant to leave the area earlier that same day. When Wade approached defendant again that day, defendant pulled out a pistol and began firing in the direction of Wade, who ran away and was not struck by any bullets.

Subsequently, defendant was pursued by Police Officer William Mooney. Mooney testified that at one point during his chase, he saw defendant "drop to his knees * * * and [begin] pawing at the ground". He stated that he observed defendant reach into his coat pocket and place something on the ground and then continue to flee. After apprehending defendant, Mooney returned to the area where he had witnessed defendant digging in the ground. Investigator Michael Buemi testified that he was told by Mooney where defendant had been and that Mooney showed him the general area where he had seen defendant digging. Buemi described how his police dog, trained to detect narcotics, searched the area and was "alerted" to a rock in the area. Upon moving the rock, Buemi stated that he found a number of small bags and a large bag containing 29 small bags of what he believed to be cocaine. A forensic chemist employed by the State Police Crime Laboratory corroborated Buemi's testimony, stating that the substance recovered contained cocaine and that the combined weight of the drugs in the bags was over one eighth of an ounce.

Wade testified that he knew defendant and that he had taken over a room in a house where defendant had been previously selling drugs. Wade further testified that during an argument over selling drugs on the day in question, defendant pulled out a pistol and started shooting; he stated that as he was running away from defendant, he saw bullets hitting the ground just ahead of him and heard bullets "zipping by" his head. Furthermore, Binghamton Police Officer Arnold Nanni testified that he read defendant his *Miranda* rights after defendant was apprehended and defendant then admitted that he purchased a gun earlier in the day and fired the gun at Wade.

The record also reveals that defense counsel challenged the credibility of the People's witnesses during cross-examination. During Buemi's cross-examination defense counsel raised the hypothesis that, since the area was a high drug-traffic area,

there was a possibility that someone other than defendant could have placed the drugs beneath the rock where they were found. Wade's credibility was also tested by defense counsel when he highlighted the fact that Wade was a drug dealer and that Wade's testimony would result in the dismissal of a drug charge against him. Defendant testified on his own behalf and stated that somebody else fired the weapon on the day in question and that he took off running; he also denied that he admitted firing the gun when interviewed by Nanni.

In our view, the testimony of the prosecution's witnesses, if accepted as true, clearly set forth all of the elements necessary to establish a prima facie case of each of the individual charges, and therefore the evidence was legally sufficient. Furthermore, since the jury could properly assess and resolve the credibility of the witnesses (*see, People v Ford*, 174 AD2d 853, 854, *lv denied* 78 NY2d 955), and could have validly believed the testimony of the prosecution's witnesses over the far different account set forth by defendant, the jury verdict was not against the weight of the evidence. As the jury was "free to reject all of defendant's testimony or to selectively credit any part that they deemed worthy of belief and reject the rest" (*People v Rose [Cousins]*, 215 AD2d 875, 876, *lv denied* 86 NY2d 793, 801), defendant's own prior admission, when coupled with the evidence presented by the prosecution, amply provided a basis on which the jury could have reached a guilty verdict.

We also reject defendant's contention that the sentences imposed by County Court were harsh and excessive. Where a sentence is within permissible statutory ranges, it shall not be disturbed unless the sentencing court abused its discretion or extraordinary circumstances exist warranting a modification (*see, People v Parson*, 209 AD2d 882, 884, *lv denied* 84 NY2d 1014). Here, County Court cited defendant's lengthy prior criminal record including a prior felony, criminal possession of a weapon in the third degree, which made defendant eligible for classification as a second violent felony offender. Upon our review of the record we find no reason to disturb County Court's sentence determination (*see, id.*, at 884; *People v Ambrose*, 160 AD2d 1097, 1097-1098, *lv denied* 76 NY2d 784).

We have reviewed defendant's remaining contentions and find them to be unpreserved for appellate review and/or lacking in merit.

Mikoll, J. P., Crew III, Yesawich Jr. and Graffeo, JJ., concur. Ordered that the judgment is affirmed.