THIRD DEPARTMENT, FEBRUARY, 2004

(February 5, 2004)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CHRISTOPHER WASHINGTON, Also Known as BORN, Appellant. [771 NYS2d 600]—

Peters, J. Appeal from a judgment of the County Court of Albany County (Rosen, J.), rendered June 9, 1997, upon a verdict convicting defendant of the crimes of murder in the second degree and criminal possession of a weapon in the second degree.

In the early morning hours of October 15, 1995, the victim died from a gunshot wound to the head, inflicted during an altercation involving defendant and Kevin Griffen. A three-count indictment was returned against defendant charging him with two counts of murder in the second degree and one count of criminal possession of a weapon in the second degree. Upon his conviction of one count of murder and criminal possession of a weapon, he was sentenced to concurrent prison terms of 25 years to life for the murder conviction and 7½ to 15 years for the weapon conviction. Defendant appeals, contending that the verdict was against the weight of the evidence, the sentence was harsh and excessive and he received ineffective assistance of counsel.

Upon our independent review of the conflicting evidence and according proper deference to the jury's unique position to hear the witnesses and determine their credibility, we conclude that the verdict rendered was not contrary to the weight of the evidence (*see People v Bleakly*, 69 NY2d 490, 495 [1987]; *People ex rel. MacCracken v Miller*, 291 NY 55, 62 [1943]). The People proved that when defendant left the apartment where he was staying on the morning of the murder, he was carrying a loaded handgun. As he and the victim walked down the street, Griffen drove up and parked his vehicle on the opposite side of the road, leaving the keys in the ignition with the engine running. He exited the vehicle, and ignored the victim's repeated requests to leave. While arguing with the victim, Griffen started to approach his vehicle when defendant said "don't do it. I'm already one step ahead," referring to the handgun which he had hidden under his shirt. After defendant revealed the handgun, the victim ran toward defendant, shouting "no, Born, no." According to Griffen, a single shot from the handgun, purportedly intended for Griffen, struck the victim directly in the mouth. Defendant got into Griffen's car and drove off while Griffen went for help.

Defendant placed the murder weapon and another loaded firearm under a van. Those weapons were later retrieved by defendant's friends, secreted in separate locations, and ultimately recovered by police. Moreover, just hours before the murder, defendant shot a handgun inside an apartment. The

bullet retrieved therefrom matched the weapon which caused the death of the victim.

Defendant testified on his own behalf, asserting that the weapon which caused the victim's death had been in his possession for about a month and that he had acquired it in order to protect himself from Griffen who had a history of violence toward the victim. His version of the altercation differed, beginning at the point when Griffen started to approach his vehicle. According to defendant, Griffen said, "I've got something for you" and went to reach inside the car. Defendant, convinced that Griffen was reaching for a weapon, lifted his shirt and showed his own gun. At that point, Griffen reached for defendant's gun and a tussle ensued. The gun went off, the victim was shot and defendant drove away in Griffen's car. Defendant stated that he found a black handgun in Griffen's car and put it, along with his gun, underneath a van, later having friends retrieve them. When asked how he acquired the gun which killed the victim, defendant explained that it had been loaned to him by an individual whose address and phone number he did not know. He further testified that he kept the gun, separated from the clip, hidden in a couch at another friend's apartment. Finally, defendant denied ever firing the gun into a ceiling as the People alleged.

In light of the evidence presented, we find that the jury could have properly concluded that the weight of the evidence supported a conviction for depraved indifference murder; the People demonstrated that defendant's acts were " 'imminently dangerous and presented a very high risk of death to others' " (*People v Hafeez*, 100 NY2d 253, 259 [2003], quoting *People v Register*, 60 NY2d 270, 274 [1983]). In our view, the jury's acquittal on the intentional murder charge does not indicate that it believed defendant's testimony more than the evidence presented by the People (*see People v Robinson*, 205 AD2d 836, 836 [1994], *lv denied* 84 NY2d 831 [1994]). Rather its verdict reflects its objective assessment of the degree of risk presented by the conduct engaged in by defendant.

Nor do we find merit to defendant's ineffective assistance claim, predicted upon his assertion that his attorney, as an officer of the court, had allegiances to the court and the state and not to him. Viewing "the evidence, the law, and the circumstances of [this] particular case, . . . in [its] totality and as of the time of the representation" (*People v Baldi*, 54 NY2d 137, 147 [1981]), we find that counsel provided meaningful representation.

Turning to the sentence, we find that County Court considered

all relevant factors. As the record reveals no abuse of discretion or extraordinary circumstances warranting its reduction, no reason exists for us to modify it (*see People v Benedict*, 274 AD2d 750, 751 [2000]; *People v Dolphy*, 257 AD2d 681, 685 [1999], *lv denied* 93 NY2d 872 [1999]).

Cardona, P.J., Mercure, Spain and Carpinello, JJ., concur. Ordered that the judgment is affirmed.